

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 6 2016

*Stepm. C.*
FOR CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 16, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | No. 90598-3 |
| v. | ) | En Banc |
| MARK TRACY MECHAM, | ) | |
| Petitioner. | ) | Filed _____ JUN 1 6 2016 _____. |

WIGGINS, J.—Officer Scott Campbell made a traffic stop of petitioner Mark Tracy Mecham and observed signs that Mecham might have been driving while intoxicated. Officer Campbell asked Mecham to perform field sobriety tests (FSTs), which would have involved Officer Campbell's observing Mecham's eye movements and ability to walk a straight line and stand on one leg. Mecham refused, and his refusal was used against him at trial. Mecham contends that his right to be free from unreasonable searches was violated when the State introduced evidence of his refusal to submit to the FSTs. We hold that Mecham's rights were not violated because an FST is not a search under our state and federal constitutions and Mecham had no constitutional right to refuse to perform the FSTs. Accordingly, we affirm the Court of Appeals, but on different grounds.

FACTS

I.  Factual history

In 2011, Officer Campbell observed Mecham driving in King County. While at a stoplight, Officer Campbell ran a random license check on Mecham's vehicle and discovered an outstanding warrant. He then turned on his emergency lights, and Mecham pulled over by turning into a parking lot. The stop was purely for the outstanding warrant; Officer Campbell did not notice anything unsafe about the manner in which Mecham was driving.

As Officer Campbell approached Mecham's vehicle, he noticed that Mecham had already begun to exit his vehicle. Officer Campbell instructed Mecham to remain seated and asked him for identification. After Mecham confirmed his identity, Officer Campbell ordered him from his vehicle, placed him in handcuffs, arrested him, and read him his *Miranda*[1] rights from a department issued card.

Following arrest, Officer Campbell smelled intoxicants on Mecham's breath and noticed that Mecham's movements were sluggish and that his speech was slurred and repetitive. He also observed an open beer can with a straw behind the passenger seat of Mecham's vehicle. Believing that Mecham was intoxicated, Officer Campbell asked Mecham if he would consent to perform FSTs in order to determine whether he was, in fact, intoxicated.

An FST is an officer's observations of a suspect driver's physical actions. The standard FST includes three components. First, in the horizontal gaze nystagmus test,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the suspect driver must follow a moving object with the eyes while the officer looks for involuntary eye movements. Second, in the walk-and-turn test, the suspect driver must take several heel-to-toe steps in a line. The third test requires the suspect driver to stand on one leg while counting out loud. These tests are specifically designed to provide statistically valid and reliable indications of a driver's blood alcohol content and "are usable only for a sobriety determination." *Heinemann v. Whitman County*, 105 Wn.2d 796, 808, 718 P.2d 789 (1986); *see also State v. Quaale*, 182 Wn.2d 191, 198, 340 P.3d 213 (2014) (horizontal gaze nystagmus test "merely shows physical signs consistent with ingestion of intoxicants"); U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., *Development of a Standardized Field Sobriety Test (SFST) Training Management System* 1-12 (Nov. 2001) (DOT-HS-809-400).

Officer Campbell told Mecham that the FSTs were voluntary, and Mecham declined to perform the test.

Officer Campbell then transported Mecham to a King County booking facility to process him on the outstanding warrant. At the booking facility, Mecham spoke with an attorney. Officer Campbell then asked Mecham to submit to a breath test.[2] This time Mecham was informed that while he had the right to refuse, his license would be revoked or suspended and that his refusal could be used against him in a criminal trial. Mecham signed a form stating that he understood the consequences of refusing to submit to a breath test. Officer Campbell repeated that the breath test was voluntary

---

[2] The State introduced evidence and argued that Mecham refused to submit to a breath analysis. Breath analysis is governed by Washington's implied consent statute, RCW 46.20.308.

and asked Mecham whether he would agree to take the breath test. Mecham responded that his attorney advised him not to answer any further questions. Officer Campbell asked Mecham a second and third time to take the breath test, and Mecham refused based on his attorney's advice.

Following this exchange, Officer Campbell spoke with Officer Darrell Moore, a drug recognition expert. With Officer Moore's help, Officer Campbell drafted an application for—and received—a search warrant authorizing a blood draw to test Mecham's blood alcohol content (BAC). Officer Campbell transported Mecham to Overlake Hospital, and the blood draw was completed just short of three hours after Mecham's initial arrest. A forensic toxicologist analyzed the blood and reported that Mecham's BAC was .05 grams per 100 milliliters (g/100 ml). This toxicologist testified that given the passage of time and the rate at which alcohol is metabolized, Mecham's BAC was likely .065 g/100 ml within two hours after he stopped driving and possibly as high as .08 g/100 ml. The State charged Mecham with one count of felony driving under the influence (DUI).

II.    Procedural history

At trial, Mecham stipulated that Officer Campbell made a lawful stop and a lawful arrest. He also stipulated that at the time of his arrest, he had previously been convicted of 4 or more prior offenses within 10 years, making this a felony DUI. RCW 46.61.5055(14)(a).

Mecham made several motions to exclude his refusal to perform an FST from evidence. The trial court denied these motions, ruling that even if an FST was a

4

search, the search was supported by probable cause. The trial court also rejected defense counsel's proposed jury instruction that read:

> Evidence has been submitted that Mr. Mecham refused to participate in voluntary field sobriety tests. This was admitted to explain the chain of events in this case.

> Every person suspected of driving under the influence has the right to refuse voluntary field sobriety tests. This evidence was admitted to explain the chain of events in this case. You may not consider this evidence for any other purpose. You shall[3] use the fact Mr. Mecham refused to participate in voluntary field sobriety tests to infer guilt or to prejudice him in any way. Any discussion of the evidence during your deliberation must be consistent with this instruction.

The State elicited testimony throughout the trial that Mecham refused to perform an FST. It relied on this evidence in its closing argument, arguing that Mecham refused to take the tests because he was guilty and because he was trying to frustrate the investigation. The jury found Mecham guilty of felony DUI.

Mecham timely appealed, asserting that an FST constitutes an unreasonable search under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. As a result, he argues, the State improperly penalized him for exercising his constitutional right to refuse consent to an FST by commenting on his refusal at trial. The Court of Appeals, Division One, affirmed his conviction. *State v. Mecham*, 181 Wn. App. 932, 954, 331 P.3d 80, *review granted*, 181 Wn.2d 1014, 337 P.3d 325 (2014). In a unanimous published opinion, the Court of Appeals rejected his argument, assuming arguendo that an FST was a search but

---

[3] It appears the word "not" may have been inadvertently omitted in this sentence (i.e., "You shall [not] use the fact Mr. Mecham refused to participate in voluntary field sobriety tests to infer guilt or to prejudice him in any way.").

holding that Officer Campbell's request for Mecham to perform the FST was justified under the *Terry*[4] stop exception to the warrant requirement.[5] *Id.* The court further held that the State did not impermissibly comment on Mecham's refusal because Mecham did not have a constitutional right to refuse the test. *Id.* at 946.

The Court of Appeals denied Mecham's motion for reconsideration but withdrew its decision and modified its opinion in ways that are unrelated to his appeal. Mecham filed a petition for review, and the State cross appealed pursuant to RAP 13.7(b), arguing that we should consider alternative arguments for affirmance that the Court of Appeals did not address. We granted both Mecham's petition for review and the State's request to review alternative issues for affirmance.

## ANALYSIS

The basic issue before us is whether the State may introduce evidence at trial of a defendant's refusal to perform an FST. We conclude that the State may offer evidence of such a refusal because FSTs are not searches under the Washington or federal constitutions, and a defendant thus has no constitutional right to refuse to perform FSTs.

---

[4] *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Washington courts recognize the *Terry* stop exception under article I, section 7 of the Washington Constitution. *State v. Setterstrom*, 163 Wn.2d 621, 626, 183 P.3d 1075 (2008).

[5] The Court of Appeals also rejected Mecham's argument that the "to convict" instruction given at his felony DUI trial violated his constitutional right to a jury trial and that the certification of mailing on the license revocation order constitutes testimonial hearsay, the admission of which violated his constitutional right to confront the witnesses against him. *Mecham*, 181 Wn. App. at 948, 952. Mecham did not pursue these issues in this court.

There is no legal obligation in Washington to submit to FSTs. *City of Seattle v. Stalsbroten*, 138 Wn.2d 227, 237, 978 P.2d 1059 (1999) (citing *City of Seattle v. Personeus*, 63 Wn. App. 461, 465, 819 P.2d 821 (1991)). Instead, a defendant's right to refuse to participate in an FST is rooted in the common law.[6] However, the absence of a statutory right of refusal has no effect on the admissibility of refusal testimony in the context of FSTs—the admissibility rests on whether constitutional privileges apply. *Id.* at 236-37.

Prosecutors may not comment on a refusal to waive a constitutional right. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (consent to waive a constitutional right may not be coerced, either explicitly or implicitly); *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978) (evidence of defendant's refusal to consent to warrantless search violates Fourth Amendment and article I, section 7); *State v. Jones*, 168 Wn.2d 713, 725, 230 P.3d 576 (2010) (prosecutor's comment on refusal to provide a DNA (deoxyribonucleic acid) sample and exercise of right to remain silent violate Fifth and Fourth Amendment rights (U.S. CONST. amends. IV, V)). However, the State may admit evidence that a defendant is asserting a nonconstitutional right as evidence of consciousness of guilt at trial. *State v. Nordlund*, 113 Wn. App. 171, 188, 53 P.3d 520 (2002).

---

[6] This contrasts with the implied consent statute for breath analysis. RCW 46.20.308. Under that statute, suspect drivers are told that they retain an absolute statutory right to refuse to submit to the breath test. RCW 46.20.308(2). However, refusal to submit to the test triggers a series of penalties: drivers are informed that their license will be revoked or suspended, and they are informed that their refusal may be used against them in a criminal trial. RCW 46.20.308(2)(a)-(b).

Since the State cannot comment on a defendant's refusal to waive a constitutional right, the dispositive issue is whether a defendant has a constitutional right to refuse to perform an FST. This is a question of first impression for this court.[7] Both Washington's constitution and the federal constitution bestow a right to be free from unlawful searches and seizures. WASH CONST. art. I, § 7; U.S. CONST. amend. IV. Mecham argues that FSTs are searches subject to these constitutional provisions because they reveal private information that is not voluntarily exposed to the public view. We reject this argument because FSTs reveal only some physical characteristics associated with inebriation, none of which is substantially different from the characteristics a person would observe from simple observation of the defendant. These characteristics are not analogous to the types of information that we have previously accorded protection under article I, section 7. We therefore hold that while a field sobriety test is a seizure, it is not a search either under article I, section 7 of the Washington Constitution or under the Fourth Amendment to the United States Constitution.

Since Mecham's refusal to perform an FST was not an exercise of a constitutional right, the trial court properly permitted the prosecutor to introduce evidence of the defendant's refusal at trial and comment on that refusal during closing argument.

---

[7] We previously suggested that the seizure incident to an FST was lawful under *Terry*. *Heinemann*, 105 Wn.2d at 809. Though *Heinemann* held that "the seizure and questioning were reasonable under the Fourth Amendment and [Wash.] Const. art. I, § 7," *id.*, we did not provide any analysis for this holding. Additionally, the opinion did not consider whether an FST could also involve a search.

I.    Standard of review

We review constitutional issues de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). When a trial court denies a motion to suppress, we also review that court's conclusions of law de novo. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

II.   A field sobriety test is a seizure

A person is "seized" within the meaning of the Fourth Amendment and his private affairs disturbed under article I, section 7 "'only when, by means of physical force or a show of authority, his freedom of movement is restrained. . . . There is a "seizure" when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998) (alteration in original) (quoting *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981)).

As set forth in *Terry*, a traffic stop is a seizure for the purposes of constitutional analysis—it is analogous to a brief investigative detention and must be based on reasonable suspicion. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). An officer has the authority to conduct a brief, investigative detention that is reasonably related to the purposes of the stop provided that the amount of physical intrusion and the length of time a detainee is stopped are limited. *State v. Wheeler*, 108 Wn.2d 230, 235, 737 P.2d 1005 (1987). The length of this *Terry* stop may change: officers may reasonably extend the length of the stop if their suspicions are either confirmed or

further aroused.[8] *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). *Terry* stops must be analyzed on a case-by-case basis. *United States v. Mendenhall*, 446 U.S. 544, 561, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) (Powell, J., concurring).

There is no question that the initial traffic stop was supported by reasonable suspicion; Officer Campbell stopped Mecham in order to investigate an outstanding warrant. However, an FST encompasses not only the initial seizure when the vehicle is stopped, but also the additional seizure during administration of the test itself: when an officer administers an FST, the suspect driver is not free to return to the vehicle and drive away. This additional seizure implicates article I, section 7 and must itself be supported by authority of law.

Officer Campbell's request that Mecham perform an FST was a constitutional seizure under *Terry*. Mecham's conduct during this traffic stop gave rise to Officer Campbell's reasonable suspicion that Mecham was driving under the influence. Officer Campbell smelled intoxicants on Mecham's breath and noticed that Mecham's movements were sluggish and that his speech was slurred and repetitive. Officer Campbell also observed an open beer can with a straw behind the passenger's seat of Mecham's vehicle. These factors, taken together, provided Officer Campbell with reasonable suspicion that Mecham was intoxicated. Officer Campbell's request that Mecham perform FSTs was supported by his reasonable suspicion that Mecham was driving a vehicle while intoxicated. However, here the lawful *Terry* stop transformed

---

[8] This does not give officers the opportunity to pursue a separate criminal investigation for which they do not have reasonable suspicion. *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1616-17, 191 L. Ed. 2d 492 (2015).

into an actual arrest. *Terry* does not guide our analysis of the investigatory procedures taken postarrest.

The issue before us is whether Officer Campbell's arrest somehow terminated his lawful authority to administer an FST to Mecham. Mecham does not challenge the lawfulness of his seizure, and we have long recognized the propriety of a seizure to perform an FST. *See Heinemann*, 105 Wn.2d at 809 (seizure and questioning in FSTs permissible under Fourth Amendment and article I, section 7). Numerous other states hold that an FST is a lawful seizure when the officer has a reasonable suspicion that an individual is driving under the influence of drugs or alcohol and the detention is limited in scope and duration to assessing a driver's intoxication. *See, e.g., State v. Wyatt*, 67 Haw. 293, 305, 687 P.2d 544 (1984) (FSTs are seizures, not searches, despite officer's direction for defendant to execute a physical routine for the purpose of gathering evidence of criminal activity); *State v. Bernokeits*, 423 N.J. Super. 365, 374, 32 A.3d 1152 (2011) (FST is a reasonable seizure); *State v. Little*, 468 A.2d 615, 617-18 (Me. 1983) (same). Recognizing that authority of law authorized the FST prearrest, we hold that Campbell had authority of law for the FST postarrest.

One of the dissents concludes that "the vast majority of courts that have addressed the issue" conclude that an FST is a search, citing 16 cases in a footnote and concluding that "11 treat an FST as a search for purposes of the Fourth Amendment analysis adopted in *Terry* . . . ." Dissent at 1-2 & n.1 (Gordon McCloud, J.) (citations omitted). The dissent neglects to mention, however, that only 2 of the cited cases assert that probable cause must support an FST. *See State v. Nagel*, 320 Or. 24, 31-35, 880 P.2d 451 (1994); *People v. Carlson*, 677 P.2d 310, 316-17 (Colo.

11

1984). One of the cases cited for the proposition that an FST is a search, in fact, holds that an FST is not a search at all. *See Galimba v. Municipality of Anchorage*, 19 P.3d 609, 612 (Alaska Ct. App. 2001) ("[W]hile breath tests are generally considered searches for constitutional purposes, typical field sobriety tests, including the HGN, *are not*. Our discussions in *McCormick*, *Grier*, and *Romo v. Anchorage* confirm that, in Alaska, police do not need probable cause sufficient for an arrest before requesting typical field sobriety tests." (emphasis added) (footnote omitted)). Another case cited, *State v. Golden*, never once mentions the word "search" and instead analyzes FSTs as lawful *seizures*. *See* 171 Ga. App. 27, 30, 318 S.E.2d 693 (1984). The remaining cases conclude that an FST is a search, but break from Washington law by permitting a "search" on less than probable cause. *See, e.g., State v. Lamme*, 19 Conn. App. 594, 600-01, 563 A.2d 1372 (1989) (rejecting probable cause standard and holding that roadside sobriety tests may be justified by reasonable suspicion), *aff'd*, 216 Conn. 172 (1990); *State v. Royer*, 276 Neb. 173, 179, 753 N.W.2d 333 (2008) (field sobriety test is a reasonable search).

We agree with the states holding that an FST is a lawful seizure and reject the analysis of states permitting a "reasonable search" on less than probable cause. *Accord State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005) (article I, section 7 is unconcerned with the reasonableness of the search); *see also Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1565, 185 L. Ed.2d 696 (2013) ("'No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it.' . . . But the general importance of the government's interest in this area does not justify departing from the warrant requirement" (quoting *Mich. Dep't of State*

*Police v. Sitz*, 496 U.S. 444, 451, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990))). We hold that an FST constitutes a seizure, but that the seizure is lawful when supported by a reasonable suspicion of driving under the influence.

III.     A field sobriety test is not a search under article I, section 7

Having concluded that an FST is a seizure, we turn to whether an FST is a search under article I, section 7 of the Washington Constitution or the Fourth Amendment to the United States Constitution. This is a question of first impression for this court, and there are no Washington cases on point.

In the absence of controlling case law, we ask first whether FSTs invade constitutionally protected privacy interests. We then examine prior cases to determine if FSTs invade the privacy interests at issue in those cases.

A. *General expectations of privacy*

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Article I, section 7 encompasses the privacy expectations protected by the Fourth Amendment and in some cases may provide greater protection than the Fourth Amendment because its protections are not confined to the subjective privacy expectations of citizens. *State v. Myrick*, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984). Under article I, section 7, "a search occurs when the government disturbs 'those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from government trespass absent a warrant.'" *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (emphasis added) (quoting *Myrick*, 102 Wn.2d at 511). In determining whether a privacy interest exists, the court considers both the historical protection afforded to the interest asserted and "the

13

nature and extent of the information which may be obtained as a result of the governmental conduct." *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007). We also consider laws supporting the interest asserted, including statutes and analogous case law. *State v. Athan*, 160 Wn.2d 354, 366, 158 P.3d 27 (2007). Finally, we look to the reasonableness of the interest asserted. *Id.* (voluntary exposure to the public can negate an asserted privacy interest); *State v. Day*, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007) (evidence in open or plain view will not be excluded).

As discussed above, FSTs require a detainee to perform three activities: visually follow a moving object while the officer looks for involuntary eye movements, walk heel to toe in a line, and stand on one leg while counting out loud. None of these activities is private in nature. Indeed, they are all physical characteristics that any observer might see upon casual observation of a person under the influence of drugs or alcohol. FSTs thus do not invade a person's reasonable expectations of privacy.

*B. No search or seizure of any object, document, or electronic data*

In assessing whether an FST is a search, we consider three factors: the historical protection afforded to the interest asserted, the nature and extent of the information revealed, and analogous case law. *McKinney*, 148 Wn.2d at 27-29. A field sobriety test is not a search in the classic sense: an FST is not a search of a person or place for a physical object such as contraband or other physical evidence. No documents, books, or papers are seized in an FST. Although not dispositive, the absence of a tangible seizure distinguishes FSTs from many traditional searches.

FSTs also do not reveal information analogous to private electronic information such as cell phone records or pen registers. *Cf. Hinton*, 179 Wn.2d at 869 (text

messages reveal "a 'wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.'" (alteration in original) (quoting *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)); *State v. Gunwall*, 106 Wn.2d 54, 69, 720 P.2d 808 (1986) (article I, section 7 protects privacy interests implicated in telephone records and pen registers). Instead, FSTs are an officer's observations of a suspect driver's actions that are designed to assist an officer in observing physical characteristics associated with inebriation. Such observations do not reveal anything like the sensitive information contained in a person's electronic communication records.

C. *Publicly observable physical characteristics*

The information revealed from FSTs is not significantly different from the information that is revealed from ordinary observation of a suspect driver's demeanor and gait. We have never considered these physical observations to constitute a search under the Fourth Amendment or under article I, section 7. Individuals do not have a privacy interest in physical characteristics that are regularly exposed to the public. *See Athan*, 160 Wn.2d at 374 (citing *United States v. Mara*, 410 U.S. 19, 21, 93 S. Ct. 774, 35 L. Ed. 2d 99 (1973)); *see also* Justice Charles W. Johnson & Justice Debra L. Stephens, *Survey of Washington Search and Seizure Law: 2013 Update*, 36 SEATTLE U. L. REV. 1581, 1596 (2013) (no privacy interest attaches to one's personality, appearance, or behavior).[9]

---

[9] *Athan* and the cases relied on in the *Survey of Washington Search and Seizure Law: 2013 Update* analyze this issue under the Fourth Amendment rather than conducting an independent analysis under article I, section 7. Regardless, Mecham does not challenge this

The fact that some of these physical observations are made because an FST requires a suspect driver to move according to a prescribed physical routine does not transform the officer's observations into a search. We have long recognized that officers may direct an individual's movement or activities to obtain information about their physical characteristics pursuant to a lawful seizure. Indeed, officers in Washington may lawfully seize individuals and require them to participate in showups or lineups, provided the amount of physical intrusion and the length of time a detainee is stopped are limited. *Wheeler*, 108 Wn.2d at 235-37 (showup permissible seizure where officers seized individual matching description of person suspected of residential burglary, handcuffed him, placed him in a patrol car, and transported him to be identified by a witness); *see also State v. Doleshall*, 53 Wn. App. 69, 72, 765 P.2d 344 (1988) (where suspect was already properly under arrest for separate offense, police may require the suspect to appear in lineup "for unrelated crimes for which there may not be probable cause to arrest").

Detainees may also be required to provide handwriting samples or voice exemplars; none of these activities are searches despite the fact that they are obtained as the result of activity that is compelled by an investigating officer. *See State v. Collins*, 152 Wn. App. 429, 439-40, 216 P.3d 463 (2009) (directive to provide a voice sample does not infringe on a privacy interest (citing *United States v. Dionisio*, 410 U.S. 1, 14, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973))); *Mara*, 410 U.S. at 21-22 (directive

---

general proposition under either the Fourth Amendment or under article I, section 7. He instead asserts that FST tests reveal additional hidden information that, like DNA or a urinalysis, is not regularly exposed to the public.

to produce handwriting sample does not infringe on privacy interest). During a lawful seizure—such as a traffic stop—officers have the authority to order suspects to produce identification, to step out of and away from their vehicles, and to perform other limited movements. *See, e.g., State v. O'Neill*, 148 Wn.2d 564, 582, 62 P.3d 489 (2003) (during seizure, officer may require driver to exit vehicle "'regardless of whether the driver is suspected of being armed or dangerous or whether the offense under investigation is a serious one'" (quoting Justice Charles W. Johnson, *Survey of Washington Search and Seizure Law: 1998 Update*, 22 SEATTLE U. L. REV. 337, 461 (1998))). Each of these orders enables the officer to observe the suspect's psychological condition and physical capabilities that they may not have exposed to the public without the officer's direction—producing identification may even provide the officer with probable cause to arrest a suspect of a crime. But none of these activities are searches.

### D. Privacy interest in bodily fluids and internal bodily functions

Field sobriety tests are also distinguishable from activities that infringe on one's privacy interest in one's internal bodily functions. An FST does not invade or penetrate an individual's bodily integrity as does a blood draw or a breath test. Nor are the tests as intrusive as the collection of urine, historically a private activity performed without public observation. *See Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). FSTs merely involve watching, walking, standing, and speaking.

Individuals have a constitutionally protected interest in the privacy of their internal bodily functions and fluids. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d

297, 308, 178 P.3d 995 (2008). We have held that the State infringes on this interest when it takes someone's blood, DNA, urine, or breath. *See, e.g., State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010) (DNA, blood, and breath tests are searches); *York*, 163 Wn.2d at 308 (urinalysis); *Robinson v. City of Seattle*, 102 Wn. App. 795, 819-22, 10 P.3d 452 (2000) (urinalysis). These activities infringe on a person's privacy interests on multiple levels: the physical intrusion associated with drawing blood and urine or of extracting "deep lung" breath intrudes on an individual's privacy; and the chemical analysis associated with these tests provide a wealth of private medical information that, as the United States Supreme Court has held, infringes on the reasonable expectations of privacy. *Skinner*, 489 U.S. at 616-17.

Mecham analogizes the FST to DNA testing or to a urinalysis and argues that field sobriety testing is a search because it is a test designed to "increase the amount and kind of observable information."[10] He acknowledges that information about balance and coordination may be readily accessible to the public but asserts the field sobriety testing elicits additional information about a suspect driver's medical conditions, psychological condition, and physical capabilities "that [the] defendant would not have exposed to the public without the officer's direction." *Nagel*, 320 Or. at 31. But the information revealed by FSTs does not differ significantly from the information that is revealed from ordinary observation of a suspect driver's demeanor

---

[10] Mecham's argument relies heavily on the reasoning of the supreme courts of Oregon and Colorado, each holding that an FST is a search. *See Nagel*, 320 Or. at 31-36; *People v. Carlson*, 677 P.2d 310, 316-17 (Colo. 1984). We find no support for concluding that FSTs are searches in the language of article I, section 7 or in our prior cases and respectfully disagree with the Supreme Courts of Oregon and Colorado.

and gait. Furthermore, as discussed in Section III.D of this opinion, *supra*, the fact that these characteristics are observed as the result of compelled action means that they are performed pursuant to seizure—but it does not transform the activity into a search.

Field sobriety tests also provide far less private medical information than that revealed by the chemical testing of blood or urine. These tests are short in duration and limited in purpose. FSTs "are usable only for a sobriety determination." *Heinemann*, 105 Wn.2d at 808; *see also Athan*, 160 Wn.2d at 367-68 (finding no privacy interest in DNA evidence when evidence was used solely for the purpose of identification, despite the fact that DNA can potentially reveal personal, medical information). We acknowledge that an officer may also make incidental observations about the suspect's physical capabilities, psychological condition, or education. Again, this information is substantially similar to information already available to the officer during the normal course of a lawful investigation. An investigating officer is already able to draw inferences about an individual's physical abilities, coordination, education, and other inferences through observation and questioning associated with a seizure. That these observations are made as the result of a prescribed routine does not transform the activity to a search.

*E. Devices enhancing sensory perception*

Nor are FSTs analogous to the use of technology that enhances officers' sensory perception, such as infrared imaging or vehicle-tracking devices.

We recognize that law enforcement's use of sensory enhancing devices to enhance their observation of suspect's activities implicates article I, section 7. *See State v. Young*, 123 Wn.2d 173, 183-84, 867 P.2d 593 (1994) (use of infrared to detect

heat signatures associated with marijuana grow operation is a search); *State v. Jackson*, 150 Wn.2d 251, 261-64, 76 P.3d 217 (2003) (GPS (global positioning system) attached to a car to monitor movement is a search). However, not all technology or techniques used to augment an officer's unaided observation of a suspect transforms that observation into a search. Officers may use flashlights or binoculars, and may even conduct aerial flyovers of a suspect's property to aid their observation without infringing on a suspect's article I, section 7 rights. *See, e.g., Myrick*, 102 Wn.2d at 514 (aerial surveillance is not a search). In determining what constitutes a search, we consider whether the technology is generally available to the public as well as the amount of information revealed by the use of that technology. *See, e.g., Jackson*, 150 Wn.2d at 262 (noting GPS tracking can "reveal preferences, alignments, associations, personal ails and foibles" of the driver based on the locations visited).

To the extent that an FST is analogous to any investigative device, the test is probably most similar to a limited canine sniff for contraband. *See State v. Hartzell*, 156 Wn. App. 918, 929-30, 237 P.3d 928 (2010) (canine sniff outside of car window is not a search because suspects have no reasonable expectation of privacy in air outside a car window). Like a canine sniff, an FST reveals only a limited amount of information—and the information an FST reveals pertains only to the physical characteristics that any member of the public could perceive by simply observing the suspect's demeanor and gait. We therefore reject the analogy to the use of sensory enhancing devices.

## F. FSTs are not searches under article I, section 7

We hold that a field sobriety test is a seizure but not a search under article I, section 7 of the Washington Constitution. FSTs merely require an officer to examine the eyes, the speech, and the ability of a suspect driver to execute a prescribed routine. The information revealed from this procedure is not analogous to the types of information that we have previously afforded protection under article I, section 7. These tests are not a physical search, nor are they analogous to a search of a tangible object such as a person's garbage. The information revealed and the level of intrusion are distinct from the taking of bodily fluids, and FSTs do not reveal information analogous to private electronic information such as cell phone records or pen registers. Instead, a field sobriety test is a limited intrusion that reveals some physical characteristics associated with inebriation. This information is revealed during the officer's investigation pursuant to a seizure; an FST is a seizure but it is not a search under article I, section 7.[11]

Justice Gordon McCloud's dissent ignores this rich body of case law we have developed when considering seizures of objects, documents, electronic data, publicly observable physical characteristics, bodily fluids, internal bodily functions, and devices enhancing sensory perception. *See Athan*, 160 Wn.2d at 366 ("In determining if an interest constitutes a 'private affair,' we look at the historical treatment of the interest being asserted, analogous case law, and statutes and laws supporting the

---

[11] Because we hold that a field sobriety test is not a search we do not consider the State's alternative argument in its answer to petition for review that the FST was lawful pursuant to an exception to the warrant requirement.

interest asserted."). As a result, this dissent departs from prior precedent and relies instead on a manual for training police officers for the theory that certain organic injuries or conditions can result in symptoms similar to those disclosed by an FST, which constitutes an invasion of privacy. Dissent at 3-4 (Gordon McCloud, J.). But we rejected a similar argument in *Athan*; when the American Civil Liberties Union (ACLU) argued that an envelope should not have been tested for DNA without a warrant because DNA can reveal private information, we held, "While this may be true in some circumstances, the State's use of Athan's DNA here was narrowly limited to identification purposes. . . . The State used the sample for identification purposes only, not for purposes that raise the concerns advanced by the ACLU." *Athan*, 160 Wn.2d at 368. The failure of the dissent even to acknowledge these prior decisions supports our conclusion that an FST is not a "private affair" under article I, section 7.

IV.     Fourth Amendment analysis

Having concluded that an FST is not a search under article I, section 7, we must also analyze whether the test is a search under the Fourth Amendment. To determine whether a search has taken place under the Fourth Amendment we consider whether the defendant possessed a "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring). A search also occurs whenever "'the Government obtains information by physically intruding' on persons." *Florida v. Jardines*, ___ U.S. ___, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013) (quoting *Jones*, 132 S. Ct. at 950 n.3).

The parties do not distinguish their Fourth Amendment arguments from their arguments under article I, section 7. We therefore hold that field sobriety testing is not

a search under the Fourth Amendment for the same reasons that it is not a search under article I, section 7: the test reveals only a series of physical characteristics associated with inebriation. These observations are not substantially different from simple, unaided observation of a defendant.

## V. Refusal testimony

Mecham argues that the State may not comment on his decision not to consent to a field sobriety test. Washington citizens enjoy the right to refuse consent to a warrantless search without penalty; comments during trial on the exercise of that right violate the Fourth Amendment and article I, section 7. *See Jones*, 168 Wn.2d at 725; *State v. Gauthier*, 174 Wn. App. 257, 267, 298 P.3d 126 (2013); *see also Prescott*, 581 F.2d at 1351. However, the State may introduce evidence that the defendant is asserting a nonconstitutional right as evidence of consciousness of guilt at trial. *See Nordlund*, 113 Wn. App. at 188; *see also Neville v. South Dakota*, 459 U.S. 553, 565, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983); *Stalsbroten*, 138 Wn.2d at 235-37 (using evidence of refusal to take a blood alcohol test permissible because "there is no constitutional right not to take the test"). Because we hold that Mecham did not have a constitutional right to refuse the FSTs, we also hold that the State did not violate his constitutional rights when it presented evidence against him at trial of his refusal to consent.

## VI. Response to dissenting opinions

This case has spawned a partial concurrence and two dissenting opinions, each on different and incompatible grounds.

The partial concurrence agrees that an FST is a seizure and not a search. Partial concurrence at 1. The opinion further agrees that an FST is a permissible seizure under *Terry* when the officer has a reasonable suspicion of impaired driving. *Id.* However, the partial concurrence goes on to conclude that the State no longer has authority of law to conduct an FST following an arrest because the justifications for investigating a crime evaporate when a suspect is arrested for a separate crime. *See id.* at 3-4. The partial concurrence bases this conclusion on the theory that continued investigations under *Terry* must be related to justification for the initial seizure, and once a suspect is under arrest for an unrelated crime, an FST's only purpose is to gather evidence of a crime—thus transforming the FST into a search. *Id.* Accordingly, reasons the opinion, once Mecham was arrested and safely detained, Officer Campbell could no longer perform an FST. *Id* at 4.

The reasoning of the partial concurrence misapprehends the scope of a *Terry* stop, which allows for the detection and prevention of crime, as the *Terry* court explained. One government interest in *Terry* stops is "effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22. After Officer Campbell arrested and detained Mecham, he was legally authorized under the principles of *Terry* to continue his investigation of Mecham's intoxication.

The partial concurrence leads to the ironic result that a police officer can ask a citizen encountered on the street to submit to an FST but cannot ask an arrested

suspect to submit to an FST. To the contrary, after arresting a suspect, the police are authorized to investigate crimes for which their suspicion is aroused and preserve evidence. *Cf. State v. Byrd*, 178 Wn.2d 611, 618, 310 P.3d 793 (2013) (custodial arrest provides "authority of law" under article I, section 7 to search arrestee because arrest "always implicate[s] *Chimel*[12] concerns for officer safety and *evidence preservation*" (emphasis added)). Indeed, we have recognized that officers can continue to compel individuals to engage in activities that are otherwise recognized as seizures following arrest for unrelated crimes without infringing on their privacy interests. For example, "[c]ompelling a person to appear in a physical lineup constitutes a "seizure" regulated by the Fourth Amendment." *In re Armed Robbery*, 99 Wn.2d 106, 108-09, 659 P.2d 1092 (1983). Police may require a suspect already under arrest for one crime to appear in a lineup for unrelated crimes without infringing on the suspect's privacy interests. *Doleshall*, 53 Wn. App. at 72; *accord People v. Hodge*, 186 Colo. 189, 526 P.2d 309 (1974); *People v. Hall*, 396 Mich. 650, 242 N.W.2d 377 (1976).

Finally, the partial concurrence is contrary to Mecham's own argument. Mecham acknowledges that he was under arrest, and he does not challenge the lawfulness of the seizure. His briefing properly recognizes that *Terry* separately authorizes "a brief investigative detention and a frisk for weapons that may harm the officer"—he argues only that neither *Terry* nor any other exception to the warrant requirement authorized an evidentiary search. Suppl. Br. of Pet'r at 19-20. However, an FST is not an evidentiary search; it is a "brief investigative detention"—also known

---

[12] *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

as a "*Terry* investigative stop"—that "allows an officer to briefly stop and detain a person without a warrant when the officer reasonably suspects that the person is engaged in criminal conduct."[13] *State v. Doughty*, 170 Wn.2d 57, 67, 239 P.3d 573 (2010) (Fairhurst, J., dissenting) (footnote omitted). Campbell's authority for this investigation did not disappear upon Mecham's arrest.

Justice Gordon McCloud's dissent argues that an FST is a search, a position adopted by neither the partial concurrence nor the other dissent. *See* discussion *supra* pp. 12-13. We thoroughly address and reject this argument in Part III of this opinion, *supra*.

The second dissent relies on an argument not adopted by either the other dissent or the partial concurrence—that the State may never use evidence of a refusal to consent to a police officer's request when the officer tells the suspect driver that consent is voluntary but fails to tell the driver that refusal may be used as evidence of consciousness of guilt. Dissent (Johnson, J.) at 1. This dissent explicitly grounds its argument in policy, arguing fairness and notions of justice. However, the United States Supreme Court has rejected this argument, holding that FSTs do not implicate the Fifth Amendment. *See Neville*, 459 U.S. at 565 ("[W]e do not think it fundamentally unfair for South Dakota to use the refusal to take the [FST] as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial."); *see also Stalsbroten*, 138 Wn.2d at 235-36. Though this dissent does

---

[13] Officers conducting a lawful brief investigative detention may not search an individual based merely on their reasonable suspicion of criminal activity. Under *Terry*, officers may conduct a limited frisk for weapons only if the officer has a reasonable concern for danger and the search is limited in scope to finding weapons. *Setterstrom*, 163 Wn.2d at 626.

not address these cases, which were acknowledged and briefed by the parties, we agree with their reasoning and hold in part V of this opinion, *supra*, that the State is prohibited only from presenting evidence that the defendant refused to waive a constitutional right. *Accord Nordlund*, 113 Wn. App. at 188.

For these reasons, we decline to adopt the reasoning of the partial concurrence or the two dissents.

### CONCLUSION

We hold that a field sobriety test is a seizure that may be justified under the doctrine of *Terry*. Therefore, Mecham did not have a constitutional right to refuse the FSTs and the trial court properly admitted evidence of Mecham's refusal as evidence of consciousness of guilt against him at trial. We also hold that an FST is not a search under our state and federal constitutions and therefore need not consider the State's request to decide alternative issues that were brought up on appeal but not addressed below.

We affirm the Court of Appeals but depart from its reasoning for the reasons expressed in this opinion.

Wiggins, J.

WE CONCUR.

Madsen, C.J.

González, J.

Yu, J.

28

No. 90598-3

FAIRHURST, J. (concurring in part and dissenting in part)—I agree with the lead opinion that field sobriety tests (FSTs) as they are normally used—either (1) following a traffic stop based on evidence of impaired driving or (2) following a stop for an unrelated offense where the officer immediately discovers signs of impairment but the suspect is not yet under arrest—are seizures that may be justified under *Terry*.[1] However, the manner in which Officer Scott Campbell utilized the FSTs in the present case exceeded the constraints imposed by *Terry* and our interpretation of *Terry*, and amounted to a search for evidence that required a warrant or a warrant exception. This being so, Mark Tracy Mecham had a constitutional right to refuse to submit to the FSTs, and the State should have been precluded from offering evidence of the refusal against him at trial.

Under *Terry*, a law enforcement officer may briefly detain a suspect based on a reasonable suspicion that criminal activity is afoot. *See State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002) ("*Terry* requires a reasonable, articulable suspicion,

---

[1]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

1

based on specific, objective facts, that the person seized has committed or is about to commit a crime." (emphasis omitted) (citing *Terry*, 392 U.S. at 21)). "[A] traffic stop is a 'seizure' for the purpose of constitutional analysis, no matter how brief." *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *City of Seattle v. Mesiani*, 110 Wn.2d 454, 460, 755 P.2d 775 (1988) (Dolliver, J., concurring)). We have extended *Terry* to traffic infractions "'due to the law enforcement exigency created by the ready mobility of vehicles and governmental interests in ensuring safe travel, as evidenced in the broad regulation of most forms of transportation.'" *State v. Day*, 161 Wn.2d 889, 897, 168 P.3d 1265 (2007) (quoting *State v. Johnson*, 128 Wn.2d 431, 454, 909 P.2d 293 (1996)). However, traffic stops under *Terry* are "permissible only if (1) 'the officer's action was justified at its inception,' and (2) 'it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Ladson*, 138 Wn.2d at 350 (quoting *Terry*, 392 U.S. at 20). A law enforcement officer may extend a *Terry* stop to continue investigating a potential crime if the officer's suspicions are either confirmed or further aroused. *See State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003).

I disagree with the lead opinion that under the facts of this case, the FSTs were merely a seizure. I arrive at this conclusion because the reasonable suspicion needed to justify an officer's continued investigation under *Terry* must arise at the *inception* of the contact and the continued seizure must be tied to the justification underlying that *initial* contact. *See Ladson*, 138 Wn.2d at 350; *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) ("The scope of the detention must be carefully tailored to its underlying justification.").

In the present case, the *Terry* stop was not "carefully tailored to its underlying justification" because justification for the initial seizure (the outstanding warrant) was wholly unrelated to the justification for the FSTs. More importantly, Officer Campbell did not discover the justification for the FSTs until after Mecham was already under formal arrest, a point the lead opinion acknowledges but does not address. *See* lead opinion at 2 ("*Following* arrest, Officer Campbell smelled intoxicants on Mecham's breath and noticed that Mecham's movements were sluggish and that his speech was slurred and repetitive." (emphasis added)). Thus, the *Terry* analysis, if applicable at all, must begin anew at the time the officer formed his suspicion that Mecham was intoxicated. Even here, under normal circumstances, I believe there would be sufficient facts to justify an extension of the traffic stop under *Terry*. However, the situation presents a unique problem because Mecham

was formally arrested for a *different* offense both when the officer formed his suspicion that Mecham was driving impaired as well as when the officer requested that Mecham perform the FSTs.

We have been clear that "*Terry* does not authorize a search for evidence of a crime." *Day*, 161 Wn.2d at 895. Therefore, while *Terry* could have been used to extend the traffic stop in order to confirm or dispel Officer Campbell's suspicions *after* the traffic stop but *prior* to arrest, *Terry* is simply inapplicable following arrest. I can find no authority that justifies expanding *Terry* from a "'brief investigative detention'" to a doctrine that permits law enforcement to redetain someone who has already been arrested for an unrelated offense. Lead opinion at 26 (quoting Suppl. Br. of Pet'r at 19). Officer Campbell's sole purpose in seeking to compel Mecham to perform FSTs, postarrest, was to gather evidence of Mecham's guilt for driving under the influence. This being so, under both the Fourth Amendment to the United States Constitution and article I, section 7 to the Washington Constitution, Officer Campbell needed a warrant, or an exception to the warrant requirement, in order to compel Mecham to perform the FSTs. *See Ladson*, 138 Wn.2d at 347-51. Because Officer Campbell had neither, Mecham had a constitutional right to refuse the search for evidence and the State should have been precluded from introducing evidence of the refusal at trial.

*Terry* operates as one of only a few "'jealously and carefully drawn'" exceptions to the warrant requirement. *See id.* at 349 (internal quotation marks omitted) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). Although I agree with the lead opinion that under different circumstances FSTs constitute only a seizure, we should refrain from expanding the brief investigative *Terry* stop to cover individuals already under formal arrest for unrelated offenses.

Accordingly, I concur in part and dissent in part.

Fairhurst, J.

*State v. Mecham (Mark Tracy)*

No. 90598-3

JOHNSON, J. (dissenting)—The lead opinion overcomplicates and confuses the issue this case presents. In doing so, the lead opinion loses track of the fundamental nature of what this case concerns—that is, a citizen's right to choose to do something or not. The officer here requested that the defendant perform specific voluntary actions, which the defendant chose not to do. For the principles of voluntariness or consent to have any meaning, the only conclusion flowing from this choice is simply that—a choice was made. No evidentiary relevance should flow from this choice. The conviction should be reversed and the case remanded for a new trial.[1]

The lead opinion goes off track by relying mostly, if not exclusively, on cases challenging the admissibility of evidence of field sobriety tests (FSTs) where the tests were performed and the results were admitted as substantive evidence of guilt. The evidence was challenged on appeal. The essence of the reasoning of

---

[1] Whether exercise of the right to choose is characterized as a privacy right, a due process right, or, as here—where the officer expressly tells the defendant the field sobriety tests are consensual—a fundamental fairness issue, the basic underlying principle is the same: that is, absent governmental authority to intrude, a person has a fundamental right to choose to be left alone.

these cases is that, since the tests are voluntary, when a person consents to performing the tests, he or she is bound to that choice, good or bad. Moreover, no logical or legal sense exists for those cases to even analyze consent and uphold the admissibility of evidence at trial outside the context of a "search." Those cases have little, if any, relevance here except the recognition that a person possesses the right to choose and that when valid consent to a search exists, the results are admissible.

Underscoring the consensual nature of this request is, unlike the statutory requirement established under our *implied* consent statutes and laws here, where an officer asks a person to perform the FSTs, no warnings, statutory or otherwise, are required advising the person of the consequences of refusal. Perhaps the statute could be revised to include FSTs and consequences of refusal, but the legislature has not acted to do so. That should logically mean that a person retains the fundamental right to choose.[2]

---

[2] One of the more significant strains of the right of privacy concerns the right of an individual to make personal decisions about his or her life free from government control. The right to choose flows from respect for personal dignity and allows an individual to define his or her own life. *See Olmstead v. United States*, 277 U.S. 438, 478, 48 S. Ct. 564, 72 L. Ed. 944 (1928) (Brandeis, J., dissenting) ("[The makers of our Constitution] conferred, as against the [g]overnment, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.").

Remarkably, and without citing any relevant case authority, the lead opinion concludes this evidence is admissible to establish consciousness of guilt,[3] which is what was argued by the State at trial. The lead opinion cites *State v. Nordlund*, 113 Wn. App. 171, 188, 53 P.3d 520 (2002), for this principle. But *Nordlund* involved a defendant's refusal to supply hair samples required by a valid court order.

What the lead opinion fails to acknowledge is that implicit in *Nordlund*, absent the authority of the court order, a person retains the right to choose to refuse. This principle was correctly recognized and analyzed by the court in *State v. Gauthier*, 174 Wn. App. 257, 298 P.3d 126 (2013), where the court reversed a conviction in which the prosecutor had improperly used at trial evidence that the defendant had refused consent to a warrantless search of his DNA (deoxyribonucleic acid). The exercise of the right to choose is not consciousness of guilt—the only consciousness the cases establish is a person made the conscious decision to choose.

Finally, the lead opinion erroneously reasons that the defendant's interests emanate from the common law, not constitutional principles, and are therefore not protected from comment or use against the defendant at trial. This conclusion, which seems to be at the core of the lead opinion's analysis, makes no sense from

---

[3] The original application of the "consciousness of guilt" doctrine was narrowly applied to the idea of flight from circumstances. *See Alberty v. United States*, 162 U.S. 499, 16 S. Ct. 864, 40 L. Ed. 1051 (1896).

an overall constitutional perspective. It should make no difference whether a principle is recognized as a privacy interest under article I, section 7 of the Washington Constitution,[4] a right of an accused under article I, section 9,[5] or more generally under article I, section 30 or article I, section 32,[6] or elsewhere under the common law, the principles and protections remain.

Especially important to cases like this one are facts such as that Mark Mecham was already under arrest and the officer was not engaging in a casual conversation concerning sports or the weather but was asking Mecham to voluntarily perform "tests" specifically designed and intended to elicit incriminating evidence. Under these circumstances, the choice in exercising the right to refuse consent should be recognized and protected. Fundamental principles of fairness arise where an officer misleads a person into making a choice only to result in the choice being used against them.

The constitution and the rights and principles are not foreign or divorced from the common law, as the lead opinion evidently believes. The constitution reflects and is founded on basic rights in existence at its adoption from the common law. The

---

[4] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

[5] "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

[6] "A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government."

conviction should be reversed and the matter remanded for a new trial.

No. 90598-3

GORDON McCLOUD, J. (dissenting)—I agree with the lead opinion that a field sobriety test (FST) is a seizure, under article I, section 7 of the Washington Constitution, to the extent that "when an officer administers an FST, the suspect driver is not free to return to the vehicle and drive away." Lead opinion at 9-10 (citing *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998)). And I agree that a warrantless FST must therefore be predicated, in the first instance, on an officer's reasonable suspicion that criminal activity is afoot. Lead Opinion at 10; *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008) ("'*Terry* [*v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),] requires a reasonable, articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a *crime*.'" (emphasis in original) (quoting *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002))).

But I disagree with the lead opinion's conclusion that an FST is not a search under the Fourth Amendment to the United States Constitution or under article I,

1

section 7 of the Washington Constitution. Like the vast majority of courts that have

addressed the issue, I conclude that an FST is a search for purposes of constitutional

analysis.[1]

---

[1] I am aware of 17 cases that squarely address the question of whether police officers may compel a subject to submit to an FST absent a warrant or probable cause. *State v. Royer*, 276 Neb. 173, 179, 753 N.W.2d 333 (2008); *Galimba v. Mun. of Anchorage*, 19 P.3d 609, 612 (Alaska Ct. App. 2001); *People v. Rizzo*, 243 Mich. App. 151, 161, 622 N.W. 2d 319 (2000); *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700 (1999); *Commonwealth v. Blais*, 428 Mass. 294, 701 N.E.2d 314 (1998); *Hulse v. State*, 289 Mont. 1, 19-20, 961 P.2d 75 (1998); *State v. Taylor*, 648 So. 2d 701 (Fla. 1995); *State v. Nagel*, 320 Or. 24, 34-37, 880 P.2d 451 (1994); *State v. Lamme*, 19 Conn. App. 594, 600, 563 A.2d 1372 (1989), *aff'd*, 216 Conn. 172, 579 A.2d 484 (1990); *State v. Gray*, 150 Vt. 184, 190-91, 522 A.2d 1190 (1988); *Dixon v. State*, 103 Nev. 272, 273-74, 737 P.2d 1162 (1987); *State v. Superior Court*, 149 Ariz. 269, 274, 718 P.2d 171 (1986); *State v. Stevens*, 394 N.W.2d 388, 391 (Iowa 1986); *State v. Golden*, 171 Ga. App. 27, 30, 318 S.E.2d 693 (1984); *People v. Carlson*, 677 P.2d 310, 316-17 (Colo. 1984); *State v. Wyatt*, 67 Haw. 293, 304-05, 687 P.2d 544 (1984); *State v. Little*, 468 A.2d 615 (Me. 1983). Of these 16, 11 treat an FST as a search for purposes of the Fourth Amendment analysis adopted in *Terry*, 392 U.S. at 30-31: *Royer*, 276 Neb. at 179; *Galimba*, 19 P.3d at 612; *Rizzo*, 243 Mich. App. at 161; *Ferreira*, 133 Idaho at 480; *Blais*, 428 Mass. 294; *Hulse*, 289 Mont. at 19-20; *Nagel*, 320 Or. at 34-37; *Lamme*, 19 Conn. App. 594; *Dixon*, 103 Nev. at 273-74; *Superior Court*, 149 Ariz. at 274; *Golden*, 171 Ga. App. at 30; and *Carlson*, 677 P.2d at 316-17. The lead opinion points out that only 2 of these cases (*Nagel* and *Carlson*) hold that an FST must be supported by probable cause. Lead opinion at 12. That is true, but it is irrelevant to the question of whether an FST is a search for purposes of the *Terry* analysis. Under *Terry*, searches may proceed on less than probable cause, but they are nonetheless limited in ways that mere seizures are not. *See* Section II.A. below. The lead opinion also asserts that one of the cases cited above—*Galimba*, 19 P.3d at 612—expressly holds that FSTs are not searches for purposes of the *Terry* analysis. Lead opinion at 12. I disagree. *Galimba*, 19 P.3d at 612 ("assuming (without deciding) that field sobriety tests are a form of a *Terry* search[;] the tests in this case were justified"). Finally, the lead opinion asserts that another case—*Golden*, 171 Ga. App. at 30—treats FSTs as seizures because it "never once mentions the word 'search.'" Lead opinion at 12. But the court in *Golden* upheld the FST under *Terry* only because the FST was justified by "the enormous danger to the public created by the presence of drunk drivers on the roadways." 171 Ga. App. at 30. Danger to the public is irrelevant under *Terry* unless the intrusion at issue is a search. *See* Section II.A. below. Thus, the *Golden* court treated FSTs as searches.

Having reached that conclusion, I next address whether such a search is constitutionally permissible. The answer depends on the facts: if such an FST search is reasonable to protect officer or public safety, then it is constitutionally permissible under *Terry*, but if such an FST search does not further any legitimate, immediate safety need, then it is constitutionally impermissible under *Terry*. In this case, Mecham was already handcuffed, removed from his car, and placed under arrest for a separate and unrelated crime before the FSTs were requested. Thus, officer and public safety were fully protected at that point; the FSTs would have served only an evidence-gathering purpose, not the safety purpose of getting a potentially dangerous driver off the road. Because the State has not shown that the *Terry* safety exception or any other exceptions to the warrant requirement applied in this case, I dissent.

I.    A Field Sobriety Test Is a Search under Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Washington Constitution

As the lead opinion correctly observes, a search occurs for purposes of article I, section 7 "when the government disturbs 'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (emphasis omitted) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151

(1984)). The lead opinion holds that FSTs are not searches under this standard because they reveal only "physical characteristics that any observer might see upon casual observation of a person under the influence of drugs or alcohol." Lead opinion at 14.

I disagree. An FST can reveal information about a person's body and medical history that are unquestionably private in nature. According to the National Highway Traffic Safety Administration (NHTSA), in addition to possible inebriation, FSTs can reveal a head injury, neurological disorder, brain tumors or damage, and some inner ear diseases. Int'l Ass'n of Chiefs of Police & NHTSA, *DWI Detection and Standardized Field Sobriety Testing, March 2013 Edition, Participant Guide* at 13, 16, www.wsp.wa.gov/breathtest/docs/dre/manuals/SFST_basic_dwidetect/2013/student_mar_2013_SFSTbasic.pdf [https://perma.cc./H9HR-A78U]. These conditions are not necessarily observable in the subject's normal public behavior; they may well be revealed only by the special maneuvers the subject is directed to perform during the FST. Indeed, if an FST did not reveal information beyond what is readily observable by the general public, there would be no need to administer it in the first place. I therefore conclude that FSTs are searches under article I, section 7 of our state constitution.

I also conclude that FSTs are searches under the Fourth Amendment to the United States Constitution. In addition to revealing sensitive personal information, an FST is at least as "annoying" and publicly "humiliating" as the limited frisk for weapons at issue in *Terry*. 392 U.S. at 24-25 ("Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.") These aspects of the *Terry* frisk—as much as any potential for a pat down to reveal sensitive personal information—were crucial to the Court's decision that the Fourth Amendment limits officer conduct during an investigative detention. *Id.* at 16-17. And they led the Court to "emphatically reject" the argument that a *Terry* frisk is not a "'search' . . . within the meaning of the Constitution":

> [I]t is simply fantastic to urge that [a pat down] performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a "petty indignity." It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

*Id.* (footnotes omitted).

Field sobriety tests implicate similar concerns.[2] Accordingly, they should trigger similar constitutional protections.

---

[2] *See Carlson*, 677 P.2d at 317 ("Indeed, in some respects, roadside sobriety testing might be considered more invasive of privacy interests than chemical testing. The latter is

II.    In this Case, No Exception to the Warrant Requirement Justified the Officer's Request That Mecham Submit to a Field Sobriety Test

Because an FST is a search, for purposes of constitutional analysis, Mecham had an absolute constitutional right to refuse to perform any FSTs unless an exception to the warrant requirement applied. *See* lead opinion at 8 (if defendant has a constitutional right to refuse participation in an FST, then State may not admit refusal evidence at trial). In this case, the State argues that two different exceptions applied. First, it argues that the warrantless FSTs were a *Terry* stop; second, it argues that the warrantless FSTs were a search incident to arrest. Given the peculiar facts of this particular case, both arguments fail.

A. *The warrantless field sobriety test in this case was not permissible as a* Terry *search*

In the context of a *Terry* stop—an investigative detention predicated on reasonable suspicion that criminal activity is afoot—the Fourth Amendment permits only a "limited search" of the suspect's "outer clothing" for weapons. *Terry*, 392 U.S. at 30-31. This search is not necessarily permitted in every *Terry* stop; instead, an officer may conduct this "limited search" only *if* he or she has a "reasonable fear"

---

usually performed in the relatively obscure setting of a station house or hospital, while roadside sobriety testing will often take place on or near a public street with the suspect exposed to the full view of motorists, pedestrians, or anyone else who happens to be in the area."); *see also Nagel*, 320 Or. at 34-35 ("the tests require defendant to perform certain maneuvers that are *not regularly performed in public*" (emphasis added)).

6

that the suspect is armed and dangerous. *Id.* An officer may *not* conduct a *Terry* search for purely evidentiary purposes—that is strictly barred by the Fourth Amendment. *Id.*

While the search approved in *Terry* was a pat down of the suspect's "outer clothing," *id.*, the United States Supreme Court has since defined permissible *Terry* searches more abstractly as "protective search[es] . . . 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) (quoting *Terry*, 392 U.S. at 26 (citing *Michigan v. Long*, 463 U.S. 1032, 1049, 1052 n.16, 103 S. Ct. 3469, 77 L. Ed 2d 1201 (1983))); *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). Using this definition, the Court has approved, under *Terry*, a comprehensive search of the passenger compartment of a suspect's car after officers saw a knife sitting on one of the floorboards. *Long*, 463 U.S. at 1050-51. This court has reached a similar conclusion under article I, section 7. In *State v. Kennedy*, we held that when an officer has reason to suspect that a weapon is concealed in the front seat of a suspect's car, searching that front seat is "similar to a *Terry* frisk" and therefore

7

"reasonable" under our state constitution. 107 Wn.2d 1, 12-13, 726 P.2d 445 (1986).[3]

In this case, the Court of Appeals held that even if an FST is a search under the state and federal constitutions, it is analogous to a *Terry* frisk and is permissible without a warrant if "the degree of intrusion [is] appropriate to . . . [the defendant's] probable dangerousness." *State v. Mecham*, 181 Wn. App. 932, 941, 331 P.3d 80, *review granted*, 181 Wn.2d 1014, 337 P.3d 325 (2014). In other words, the Court

---

[3] The lead opinion mistakenly asserts that Washington's constitution (article I, section 7) is *always* "'unconcerned with the reasonableness of the search'" in question. Lead opinion at 12. On the contrary, whether "reasonableness" factors into our state constitutional analysis depends on the government's justification for the search. Where an officer asserts only a "reasonable [but erroneous] good faith belief" that he or she had permission to conduct a warrantless search, we depart from Fourth Amendment analysis and hold that the reasonableness of the officer's belief is irrelevant. *State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005); *see also State v. Eisfeldt*, 163 Wn.2d 628, 634-635, 638, 185 P.3d 580 (2008) (declining to adopt any "private search doctrine" on the basis that "article I, section 7 is unconcerned with the reasonableness of the search"). But in the context of *Terry* searches, this court applies the same basic analysis, under article I, section 7, that the United States Supreme Court applies under the Fourth Amendment—an analysis that asks whether a search was *reasonable. Cf. Michigan v. Long*, 463 U.S. 1032, 1051, 103 S. Ct. 3469, 77 L. Ed 2d 1201 (1983) ("[i]n evaluating the validity of an officer's investigative or protective conduct under *Terry*, the '[t]ouchstone of our analysis . . . is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security'" (second and third alterations in original) (internal quotation marks omitted) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09. 98 S. Ct. 330, 54 L. Ed. 331 (1977))); *State v. Kennedy*, 107 Wn.2d 1, 12-13, 726 P.2d 445 (1986) (search of front seat of suspect's car was "similar to a *Terry* frisk" and therefore "reasonable" under article I, section 7); *State v. Horrace*, 144 Wn.2d 386, 394, 28 P.3d 753 (2001) (quoting *Terry* and embracing its search analysis as consistent with article I, section 7 protections: "to justify the intrusion of a limited pat-down search, 'the police officer must be able to point to specific and articulable facts which . . . reasonably warrant that intrusion'").

of Appeals reasoned that a drunk driver behind the wheel is like a concealed weapon, for which an officer may conduct a limited search during a *Terry* stop. The court further held that the balance of interests justified the search in this case: "The attendant intrusion was . . . appropriate given [the officer's] training and Mecham's evident intoxication . . . [the] request for Mecham to perform a field sobriety test was justified under the *Terry* stop exception to the warrant requirement." *Id.* at 945.

In the usual case, the Court of Appeals' conclusion may well be correct. Indeed, nearly every jurisdiction that has addressed the issue has approved warrantless FSTs under *Terry*.[4]

But this case is different. In this case, the subject of the FST, Mecham, posed absolutely no risk to public safety: he was already handcuffed and under arrest when the officer asked him to perform the tests and therefore presented no possibility of returning to his car to drive drunk. Lead opinion at 2.

Under those circumstances, an FST serves no public safety function. Instead, it serves only to reveal evidence that may be used against the subject in a criminal prosecution. Such purely evidentiary searches are absolutely prohibited under *Terry*,

---

[4] *E.g.*, *Royer*, 276 Neb. at 179; *Galimba*, 19 P.3d at 612; *Rizzo*, 243 Mich. App. at 161; *Ferreira*, 133 Idaho at 480; *Blais*, 428 Mass. 294; *Hulse*, 289 Mont. at 19-20; *Taylor*, 648 So. 2d 701; *Lamme*, 19 Conn. App. at 600; *Gray*, 150 Vt. at 190-91; *Dixon*, 103 Nev. at 273-274; *Superior Court*, 149 Ariz. at 274; *Stevens*, 394 N.W.2d at 391; *Golden*, 171 Ga. App. at 30; *Wyatt*, 67 Haw. at 304-05; *Little*, 468 A.2d 615.

9

as even the State appears to concede. 392 U.S. at 30-31; *Ybarra*, 444 U.S. at 93-94; *see* State's Suppl. Br. at 14-15 (arguing that it does not matter that the FST served purely evidentiary purposes in this case because the FST was not a search). In fact, even the lead opinion concedes this legal point. Lead opinion at 26 n.13 ("Officers conducting a lawful brief investigative detention may not search an individual based merely on their reasonable suspicion of criminal activity. Under *Terry*, officers may conduct a limited frisk for weapons only if the officer has a reasonable concern for danger and the search is limited in scope to finding weapons. [*State v.*] *Setterstrom*, 163 Wn.2d [621,] 626[, 183 P.3d 1075 (2008)].")

The FST in this case was a purely evidentiary search prohibited under *Terry*. Thus, *Terry*'s exception to the warrant requirement did not apply.

> B. *The warrantless field sobriety test in this case was not permissible as a search incident to arrest*

The State also argues that because Mecham was under arrest when the officer asked him to perform the FSTs, the FSTs were a valid "intrusion incident to arrest." Suppl. Br. of Resp't at 19. It cites this court's decision in *State v. Byrd*, which reasoned that "[t]he authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself." 178 Wn.2d 611, 618, 310 P.3d 793 (2013) (citing *United States v. Robinson*, 414 U.S. 218, 232, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). The State argues that, excluding certain extremely invasive

searches, "the full search of a person under lawful arrest is per se reasonable." Suppl. Br. of Resp't at 20 & n.4 (citing *Robinson*, 414 U.S. at 235).

This argument is meritless. Officers may always search an arrestee's person incident to arrest, but that is because certain "exigencies are presumed when an officer searches an arrestee's person." *Byrd*, 178 Wn.2d at 620 (emphasis omitted). Specifically, it is presumed that the arrestee may be concealing a weapon or destructible evidence—these are the only two "exigencies" that can justify a search incident to arrest. *Id*. at 617-18.

Mecham's possible intoxication is neither a weapon endangering officer safety nor evidence that Mecham might have destroyed. Thus, an FST—a search that served only to uncover this intoxication—does not fall within the search incident to arrest exception.

## CONCLUSION

Mecham posed no risk to public safety once he was placed under arrest, so the FST at issue in this case was a purely evidentiary search. That search was therefore unconstitutional. As all parties and the lead opinion agree, a person has a right to refuse an unconstitutional search and the prosecution "may not comment on a refusal

to waive a constitutional right." Lead opinion at 7.[5] Accordingly, I would reverse the Court of Appeals and hold that evidence of Mecham's refusal was improperly admitted at trial. I therefore respectfully dissent.

---

[5] Since the State commented on this defendant's right to refuse to waive a constitutional right, I do not analyze the lawfulness of a comment on a defendant's refusal to waive a "common law" right, as the lead opinion calls the right to refuse FSTs. Lead opinion at 7. I note, however, that the lead opinion errs in citing *State v. Nordlund*, 113 Wn. App. 171, 188, 53 P.3d 520 (2002), for the supposed rule that "the State may admit evidence that a defendant is asserting a nonconstitutional right as evidence of consciousness of guilt." Lead opinion at 7. *Nordlund* actually held that the State has a right to argue consciousness of guilt when the defendant fails to comply with a *lawful* court order (in that case, an order to supply hair samples). 113 Wn. App. at 188. It does not address a defendant's refusal to comply with an *unlawful* order, even one that is unlawful only under the common law. I also note that the arresting officer here specifically told Mecham that the FSTs were "voluntary." Lead opinion at 3. To the extent that Mecham reasonably relied on this statement when he declined to perform the tests, then, regardless of the source of the right to refuse, estoppel principles arguably bar the State from using that decision against Mecham at trial. *See, e.g., State v. Minor*, 162 Wn.2d 796, 800-01, 804, 174 P.3d 1162 (2008) (conviction for unlawful possession of a firearm reversed because prior court's failure to properly fill out order affirmatively "misled [defendant] into believing he could possess firearms"); *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 659, 93 S. Ct. 1804, 36 L. Ed. 2d 567 (1973) (corporate defendant's conviction reversed so that trial court could consider whether defendant reasonably relied on United States Army Corps of Engineers' regulations to conclude that its conduct did not violate statute).

*State v. Mecham (Mark Tracy)*, No. 90598-3
(Gordon McCloud, J., Dissenting)

Gordon McCloud, J.

Stephens, C.J.

13