IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,037

In the Matter of ERIC MICHAEL GAMBLE,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 5, 2014. Six-month suspension.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Eric Michael Gamble*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Eric Michael Gamble, of Kansas City, an attorney admitted to the practice of law in Kansas in 2003.

On March 24, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on April 17, 2014. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on May 13, 2014, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice); and KRPC 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     An expectant 18-year-old mother arranged for the adoption of the baby she was carrying. Shortly after the child's birth, she executed a consent to adopt on October 12, 2012. The child was immediately placed with the adoptive parents. The adoptive parents filed a petition for adoption on October 16, 2012, in Johnson County District Court.

"9.     The biological father did not consent to the adoption. The court scheduled a hearing on the termination of the biological father's parental rights and adoption for June 27, 2013. The respondent represented the biological father in the proceedings.

"10.     Prior to the hearing, on June 18, 2013, the respondent deposed the biological mother. At this point in the proceedings, the biological mother was not represented by counsel. The adoptive parents appeared through their attorney. During the deposition, the biological mother testified that, at age 17, she worked with the biological father at a restaurant. The biological mother testified that after having worked together for a few months, they went on a date. The biological mother testified that she became pregnant on their first date. The biological mother decided to arrange for the adoption of the child as she and the biological father were not in a relationship. Throughout her pregnancy and after the birth of the baby, the biological mother was resolute about her decision to have the child adopted. The biological mother clearly testified that she was not prepared to be a mother. Finally, the biological mother testified that the process was 'emotionally exhausting.'

"11.     On June 20, 2013, 2 days after the deposition, the respondent sent the biological mother a private message through Facebook. The private message provided:

'Dear [biological mother]

'I wish to offer you some reasons why you should stand up and fight for your daughter. As you know, I am the attorney for [the biological father]. We held your deposition in my office. I wanted to give you the chance to make things right. This may be your last opportunity to be a mom for [the baby]. As I told you after your deposition in my office, it is not too late. You still have a wonderful opportunity to have a real relationship with your daughter if you so choose. I have attached a document for you to consider signing and bringing to court or to my office. It is a revocation of your consent to adopt. If you sign this document there is a very good chance that you will be able to call [the baby] your own and [the baby] will call you her mom. I can't begin to explain how beautiful and wonderful parenthood is. I have a little girl myself and she is my world just like you are your dad's world. [The baby] deserves to know her parents. She deserves to know that you love her and care for her as well. Do not let this opportunity pass you by because you will live with this decision the rest of your life and [the baby] will know someday what happened. [The adoptive parents] do not legally have to ever let you see her again after court (although they are probably trying to convince you otherwise with the idea of an 'open adoption'). The reason why you don't know about the trial was because they don't want you there because that doesn't help [the adoptive parents] case. This is your time to get rid of the guilt and standup and do what is right and what [the baby] deserves. She deserves to have her parents love and care for her. She deserves to know her grandparents and extended family. If she's adopted, she won't have that chance. [The biological father] wants to be her dad and to love her. She deserves that. I urge you to print, sign, and notarize this document and bring it to my office before

3

court. Trial is June 27, 2013, at 9:00 a.m. at the Johnson County Courthouse, Division 15. I hope to see you and your father there.'

"12. The respondent drafted a 'revocation for relinquishment of parental rights and consent to adoption of minor child,' for the biological mother's signature. The respondent attached the document to the private Facebook message. The respondent urged the biological mother to print, sign, and notarize the document and bring it to his office prior to the hearing and bring it to the courthouse on June 27, 2013.

"13. At the time the respondent sent the biological mother the message, he knew what the biological mother's position was regarding the adoption, as he had taken her deposition 2 days before.

"14. The biological mother appeared at the June 27, 2013, hearing pursuant to a subpoena issued by the adoptive parents. She declined to revoke her consent to the adoption. Opposing counsel brought the respondent's communication to the biological mother to the court's attention. At the outset of the hearing, the court took up the matter. The court made no specific rulings on the respondent's conduct. At the conclusion of the hearing, the court took the termination of parental rights issue under advisement.

"15. On June 28, 2013, the respondent sent a letter to the disciplinary administrator, self-reporting his conduct. The respondent's letter provided:

'I wish to self-report a likely violation of the following rules of professional conduct. I do so because I believe I may have given legal advice to an unrepresented person.

'I am currently representing a father in a parental rights termination proceeding in Johnson County, KS. See Johnson County Case No. 12AD182. During the course of my representation of this client, and in preparation of trial, on 6/20/13 I sent a communication to the biological mother of the minor child who is the subject of the termination/adoption proceedings. Mother is unrepresented. Previously, on 10/12/12, mother

4

signed and filed a Consent to Adoption of Minor Child of her and my client's infant daughter. I have attached her Consent to the Adoption of Minor Child filed in this case. In addition, I have enclosed a copy of the email I sent her via my Facebook Account and a copy of the Revocation of Relinquishment of Parental Rights and Consent to Adoption of Minor Child which I attached to my email. I couldn't print the Facebook email from my account so I forwarded it to my yahoo account for purposes of printing it out.

'The purpose of my communication to this particular individual was to inquire of her whether she wished to reconsider her desire to place the child for adoption. I believe the communication contained legal advice to an unrepresented person. Whether this legal advice was 100% correct, I am unsure. Clearly, it was my objective to advocate for my client's desired goal to have custody of the child. I attempted to influence this unrepresented witness in hopes of advancing my own client's goal to have custody of his daughter. The document was drafted in anticipation of an extremely contested trial. In hindsight, it was a communication that was hastily drafted and sent without proper revision.

'I believe the following rules apply with respect to this communication:

'4.3 Transactions with Persons Other than Clients:  Dealing with Unrepresented Person

'*In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.*

'As applied to this communication, I identified myself as the attorney for [] the biological father of the child. In fact the mother/witness []

5

previously knew who I was and who I represented because I took her deposition in my office on 6/18/13. See enclosed copy of deposition. However, the comments to this rule indicate that a lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.

'In addition, I believe I may have violated the following rule:

'KRPC 226: 4.1 [2013 Kan. Ct. R. Annot. 617] Transactions with Persons other than Clients: Truthfulness in Statements to Others

> '*In the course of representing a client a lawyer shall not knowingly:*
>
> '*(a)    make a false statement of material fact or law to a third person; or*
>
> '*(b)    fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by or made discretionary under Rule 1.6.*

'Although I do not believe I submitted a false statement of material fact, my statement to her that "[the adoptive parents] do not legally have to ever let you see her again after court" could be considered legal advice. My understanding in this matter is that once the adoption passes, she will have no rights to the child. This is how I interpret her consent as it states she is "permanently giving up all custody and other parental rights to the child." Thus, I believe this to be a true statement. But nevertheless, it contains legal advice. [The biological mother] has not signed the Revocation document, nor did she change her mind about wanting to be a mother. Trial was held on this matter on 6/27/13 and she did not wish to reconsider relinquishing her rights. I admit, however, that my

6

emotional commentary could have been left out of the message and could be considered a "false statement."

'Please consider this act of self-reporting an acknowledgement on my part of this violation. I have realized over the years that I can sometimes be a little overzealous in my representation of my clients. I should not have sent the message. Thank you.'

"16.     On July 17, 2013, the court issued an order terminating the biological father's parental rights. The court finalized the adoption on July 31, 2013.

"*Conclusions of Law*

"17.     Based upon the respondent's admissions during the hearing and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(d) and KRPC 8.4(g), as detailed below:

"KRPC 8.4(d)

"18.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in professional misconduct when he sent the electronic mail message to the biological mother.

"19.     First, the respondent knew that the biological mother had consented to the adoption and he was well aware after her deposition that she did not want to revoke her consent to the adoption. The respondent, by sending the electronic mail message, attempted to manipulate the biological mother and, as a result, interfered with justice. The respondent's misconduct in this regard was knowingly done.

"20.     In addition, the respondent included false statements of material fact in the electronic mail message. The respondent had no evidence that the adoptive parents were keeping the fact of the hearing from the biological mother or that the adoptive

7

parents did not want her to be there. In fact, the opposite was true. The adoptive parents had the biological mother under subpoena to appear at the hearing. The respondent's statement that the adoptive parents were attempting to conceal the fact of the hearing from the biological mother was a material false statement of fact. While there is no evidence that the respondent knew that the facts were false at the time he made the statement, his failure to fully investigate the facts before sending the email message is professional misconduct. The hearing panel concludes that the respondent recklessly made a false statement of material fact which was prejudicial to the administration of justice.

"21.    Next, the respondent made a false statement of law in the electronic mail message. The respondent stated that if the biological mother signed the revocation of consent that there was 'a very good chance' that the baby would again be hers. However, the respondent was not familiar with K.S.A. 59-2114. That statute provides:

'A consent is final when executed, unless the consenting party, prior to final decree of adoption, alleges and proves by clear and convincing evidence that the consent was not freely and voluntarily given.'

The respondent had no evidence that the biological mother's consent was not freely and voluntarily given—again, the opposite was true. The biological mother consented to the adoption and continued to consent to the adoption. Once again, the respondent failed to research the law in this area and made the statements based upon his false supposition. Negligently including a false statement of law in the communication is prejudicial to the administration of justice.

"22.    Further, the respondent prepared legal documents which would dramatically alter the life of an 18 year old, he presented her with the legal documents, and at no time did he suggest or recommend that she seek counsel. The respondent's preparation and presentation of the revocation of consent to the biological mother constituted legal advice to an unrepresented interested party without the suggestion that she seek counsel is prejudicial to the administration of justice. The hearing panel

8

concludes that the respondent's professional misconduct in this regarding was knowingly done.

"23.  Thus, the hearing panel concludes that by sending the electronic mail message, the respondent engaged in professional misconduct that was prejudicial to the administration of justice, in several distinct ways, in violation of KRPC 8.4(d).

"KRPC 8.4(g)

"24.  'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in professional misconduct that adversely reflects on his fitness to practice law when he sent the electronic mail message to the biological mother. Despite the biological mother's clear testimony that she did not wish to change her mind and that the process was 'emotionally exhausting' for her, 2 days later the respondent sent the electronic mail message which, in essence, amounted to emotional blackmail. The respondent told the biological mother that this was her 'chance to make things right.' He stated, 'it is not too late.' The respondent told the biological mother that the baby 'deserves to know that you love her.' Additionally, he told her that this was her 'time to get rid of the guilt and stand up and do what is right and what [the baby] deserves.' The respondent warned the biological mother to 'not let this opportunity pass you by because you will live with this decision the rest of your life.' He also threatened that the adoptive parents 'do not legally have to ever let' her see the baby again. Finally, the respondent related his own personal experiences as a parent. The respondent's intentional bullying tactics directly reflect on his fitness to practice law as an attorney. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(g).

"25.  The disciplinary administrator also alleged that the respondent violated KRPC 4.1, KRPC 4.3 [2013 Kan. Ct. R. Annot. 622], and KRPC 4.4 [2013 Kan. Ct. R. Annot. 622]. While portions of the respondent's misconduct are covered by each rule, the hearing panel concludes that the respondent's misconduct does not fit squarely in those three rules.

9

"26.    KRPC 4.1(a) provides, '[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.' In his June 20, 2013, electronic mail message, the respondent certainly made false statements of material fact and law to the biological mother. However, the respondent's false statements were made negligently and recklessly—he took absolutely no steps to research the law or the facts to verify the statements that he made to the biological mother. No evidence was presented to establish that the respondent's conduct was done knowingly.

"27.    In attorney disciplinary cases, for a violation to have been committed knowingly, actual knowledge must be established. Further, however, knowledge can be imputed from the circumstances. KRPC 1.0(g) and *In re Kline*, 298 Kan. 96, 125, 311 P.3d 321, 343 (2013). In this case, it is not reasonable to impute knowledge to the respondent from the circumstances present. While the hearing panel believes that the respondent' s failure to properly investigate facts and law before make statements—or his incompetence—should not be a defense in a disciplinary case, the hearing panel finds that this specific conduct is in violation of another rule, as detailed above.

"KRPC 4.3

"28.    Next, we turn to KRPC 4.3.

'In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.'

There was no evidence presented that the respondent stated or implied that he was disinterested. The record is clear that the biological mother knew who the respondent represented and the respondent's role in the matter. However, the respondent did violate

10

the comment to KRPC 4.3, by providing legal advice—other than advice to seek counsel—to the biological mother. The comment to KRPC 4.3 has not been incorporated into the rule and, as a result, the hearing panel concludes that the respondent did not violate KRPC 4.3.

"KRPC 4.4

"29.     Finally, KRPC 4.4(a) provides:

'In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.'

In this case, the respondent's electronic mail message was designed to embarrass, burden, and create guilt in the mind of the biological mother so she would revoke her consent to the adoption. The message was inappropriate and should not have been sent. However, the respondent's purpose in sending the message was to improve his client's position. Improving his client's position is a substantial purpose. Thus, the 'no substantial purpose' requirement of KRPC 4.4 has not been met and the hearing panel finds no violation of KRPC 4.4.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"30.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

11

"31.    *Duty Violated*. The respondent violated his duty to the public to maintain his personal integrity.

"32.    *Mental State*. The respondent negligently, recklessly, knowingly, and intentionally violated his duty, as detailed in each conclusion of law above.

"33.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual and potential serious injury. The respondent fails to recognize the injury that he caused. At the hearing on the formal complaint, the respondent testified that the adoption went through so the adoptive parents were not injured. He also testified that he was the only one injured by his misconduct. The respondent needs to understand that he caused injury to the legal system, to the legal profession, to the biological mother, to the adoptive parents, and potential injury to the baby. The respondent's inability to acknowledge any injuries by his conduct, except his own time and the time spent by the hearing panel for hearing the matter, is troubling to the hearing panel.

"Aggravating and Mitigating Factors

"34.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"35.    *Prior Disciplinary Offenses*. The respondent has been previously disciplined on two occasions.

        a.    The first occurrence, in 2005, the Respondent entered into the attorney diversion program for having violated KRPC 4.2. In that case, the respondent did not believe that a conservatee wanted his conservator to take the action that the conservator was taking, so the respondent contacted the conservatee to find out the conservatee's position on the litigation. The respondent successfully completed the terms and conditions of diversion and following the period of diversion, that complaint was dismissed.

12

b.      Second, on January 10, 2013, a hearing panel of the Kansas Board for Discipline of Attorneys informally admonished the respondent following a hearing on a formal complaint. In the final hearing report, the hearing panel concluded that the respondent violated KRPC 8.4(d) and provided the following guidance for the respondent and any future hearing panels hearing attorney disciplinary cases regarding the respondent:

'60.      The Respondent's attitude displayed during the disciplinary hearing and throughout the domestic case in Shawnee County, Kansas, was unprofessional and needs improvement. If the Respondent's attitude and treatment of others does not change, he will find himself where he does not want to be—right back before a Hearing Panel of the Kansas Board for Discipline of Attorneys.

'61.      According to the ABA Standards for Imposing Lawyer Sanctions, § 6.21, suspension was a real possibility in this case. The Respondent **knowingly** violated a court order. The Respondent was put on notice of the court hearing scheduled for September 28, 2011, and did not appear. The Respondent's motion to continue was inappropriate and did not explain to the court why he was not available. Further, the Respondent took no steps to ensure that an attorney appeared on his behalf. The Respondent's conduct was not negligent—it was done with knowledge. As such, Standard § 6.21 arguably applies. [Emphasis in original.]

'62.      A statement that Judge Yeoman made during the January 6, 2012, hearing sums up the Respondent's conduct throughout the domestic case as well as the disciplinary case: "[W]ell, you, Mr. Gambel [*sic*] seem to want to push the limits wherever they are." And, just as Judge Yeoman concluded, the most troubling thing about this matter is the Respondent's failure to attend a scheduled hearing.

13

. . . The thing that concerns me most about all of this is that the [the Respondent] refused to attend a scheduled hearing, announcing his request for continuance. I've recited this before, but I think it [is] worth repeating. Direct quote: [The Respondent] will not be present at this hearing, as it is unduly burdensome to appear in court on such an issue. [The Respondent] will be available by cell phone if the Court pleases. The impotence [*sic*] reflected by that borders on contemptuous. We have learned and [he] appears to concede that he was not, in fact, available by cell phone at the time the hearing was held even if that was to be considered. The request for continuance was not properly presented, not—no continuance was obtained in advance of the hearing, he had an obligation to be there. If he was—if he, in fact, had some event occurring in his life that would not allow him to be there, he, like any other lawyer, would have the responsibility to see that someone was there instead and he didn't do that. And he didn't do that, not just because of what he couldn't do, but I'm satisfied, because of an attitude.'

In order to have a career which does not end in revocation of his license to practice law, the Respondent must change his attitude.

'63.    In light of his youth and the Hearing Panel's hope that the experience of the discipline hearing will serve as a wake-up call to the Respondent and that he will change his attitude and conduct, the Hearing Panel is not inclined to recommend that the Respondent be suspended or censured for his conduct. However, if the Respondent does not make some significant changes, a loss of his Kansas license is inevitable.

14

'64.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be informally admonished. This Final Hearing Report shall serve as the Respondent's informal admonition for his violations of KRPC 8.4(d).

'65.    **If the Respondent engages in future misconduct, the Hearing Panel would suggest to any future Hearing Panels that the Respondent's chances have been used up and any subsequent disciplinary matters should result in proceedings before the Kansas Supreme Court.** [Emphasis added.]'

"36.    *A Pattern of Misconduct.* This is the third time the respondent has engaged in misconduct. The three cases are similar in that each of the cases involved the respondent's failure to comport with appropriate boundaries.

"37.    *Vulnerability of Victim.* The biological mother and the adoptive parents were vulnerable to the respondent's misconduct.

"38.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"39.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* While the respondent self-reported the misconduct, admitted the facts, and admitted the two rule violations, his demeanor and attitude during the hearing regarding the disciplinary process and Ms. Baird was not one of cooperation.

"40.    *Inexperience in the Practice of Law.* While the Kansas Supreme Court admitted the respondent to the practice of law in 2003, the respondent is inexperienced in the practice of adoption law.

15

"41.    *Remorse*. At the hearing on this matter, the respondent stated that he was remorseful for being at the disciplinary hearing and he regretted sending the electronic mail message. The respondent's remorse is a minor mitigating factor.

"42.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'6.32    Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.

'6.33    Reprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.3    Reprimand is generally appropriate when a lawyer:

(a)    negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

16

(b)      has received an admonition for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation*

"43.     The disciplinary administrator recommended that the respondent be suspended from the practice of law. Further, the disciplinary administrator recommend that the hearing panel consider ordering a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219.

"44.     The respondent argued that suspension was not warranted in this case. The respondent suggested that an informal admonition was a more appropriate sanction for the misconduct.

"45.     The respondent's presentation during the hearing on the formal complaint was emblematic of the respondent's unprofessional conduct that brought him before the hearing panel. For example, the hearing panel notes the following five examples of the respondent's approach—speaking without thinking—which trouble the hearing panel.

"46.     First, during the hearing on the formal complaint, the respondent complained that it took an excessive time period—more than 15 months—from the time of the self-report letter to the hearing on the formal complaint. Later, the respondent acknowledged that he self-reported the misconduct on June 28, 2013, and the hearing occurred on May 13, 2014, less than 11 months later. While the respondent is not privy to this information, the hearing panel would like to point out that the amount of time that passed from the self-report to the hearing on the formal complaint was perhaps the shortest amount of time in the hearing panel's memory.

"47.     Second, the respondent made an unwarranted personal attack on Ms. Baird. He accused her of having a personal vendetta against him. The respondent argued

17

that her approach was overreaching. Ms. Baird is employed to review complaints and investigations and prosecute complaints when so directed by the review committee of the Kansas Board for Discipline of Attorneys. The idea that Ms. Baird is personally attacking the respondent by simply doing her job is outrageous. As the respondent will see below, Ms. Baird was not excessive in her recommendation.

"48.    Third, the respondent argued that there are many other attorneys practicing in Kansas who have engaged in much worse misconduct than he did and they have not been brought before the hearing panel. The hearing panel finds this argument to be absurd. To the respondent's credit, he did not actually argue that he should not be disciplined because the anonymous rule-breaking attorneys are not being disciplined. However, to make that statement during a disciplinary hearing seems unusual to the hearing panel and indicative of the respondent's poor attitude.

"49.    Next, the respondent argued that the attorney disciplinary system has oppressed him. He suggested that there ought to be a better system to handle attorney disciplinary cases than to require attorneys to come before a hearing panel of the board. Unfortunately for the respondent, the attorney disciplinary system in Kansas, as well as in other jurisdictions, requires attorneys who have violated the rules of professional conduct to be held accountable for their actions. Due process necessitates a hearing with an opportunity to be heard. In this case, the respondent knew that he had engaged in misconduct, he self-reported the misconduct eight days after sending the electronic mail message to the biological mother. Further, in the self-report letter, the respondent admitted that his conduct was in violation of the rules. In order to avoid the attorney disciplinary system, all the respondent has to do, as Ms. Baird pointed out, is to comply with the Kansas Rules of Professional Conduct.

"50.    Finally, perhaps the most troubling of all the statements made by the respondent was the statement that he did not prepare for the attorney disciplinary hearing. If the respondent wanted to maintain his license, he ought to have at least prepared for the hearing. It would have benefitted the respondent to plan what he said to the hearing panel, rather than to just say what came to his mind. While the respondent can repeatedly state that he does a good job for his clients, the hearing panel only observes the

18

respondent during the hearing on the formal complaint. The hearing panel is called upon to make recommendations based on the evidence presented as well as observations made during the hearing. Nothing about the respondent's presentation aided his case during the hearing. The respondent's statement that he did not prepare for the hearing is somewhat related to the misconduct in this case. Perhaps if he had employed proper preparation in representing the biological father, if he had stopped to think about what he was saying, maybe he would have not sent the electronic mail message to the biological mother.

"51.     Despite the respondent's abysmal attitude, absent the prior discipline, the hearing panel may have been inclined to recommend a censure to be published in the Kansas Reports. However, the misconduct in this case occurred just a few short months after the respondent was strongly admonished by the previous hearing panel. The respondent's misconduct in all three of the attorney disciplinary cases is linked by the respondent's overreaching approach and failure to recognize reasonable boundaries. Accordingly, based upon the findings of fact, conclusions of law, the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 60 days.

"52.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

19

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice); and KRPC 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law). We adopt the panel's legal conclusions regarding the respondent's violation of KRPC 8.4(d) and 8.4(g).

At the hearing before this court, Kate F. Baird, Deputy Disciplinary Administrator, urged this court to also find violations of KRPC 4.1(a) (2013 Kan. Ct. R. Annot. 617) (truthfulness in statements to others) and KRPC 4.3 (2013 Kan. Ct. R. Annot. 622) (dealing with unrepresented person). Although we recognize the Disciplinary Administrator's office is not required by court rule to file exceptions to a hearing panel report, we are reluctant to determine issues on which additional briefing has not been presented to the court when, as in this case, little would change even if we found additional violations. As we will more fully discuss, we agree with the Disciplinary Administrator's recommendation regarding the sanction to be imposed against the respondent for the violations found by the hearing panel and conclude that a finding of additional violations would not alter our assessment of the appropriate sanction.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a

period of 6 months, rather than the 60 days recommended by the hearing panel; the Disciplinary Administrator also requested we order a reinstatement hearing under Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407). The respondent suggested that published censure was the appropriate sanction because respondent self-reported his conduct and he has undertaken anger management therapy.

The hearing panel's recommendation is "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended." Supreme Court Rule 212(f) (2013 Kan. Ct. R. Annot. 377). Here, we do not view the panel's recommended 60-day suspension as adequate. Rather, we agree with the Disciplinary Administrator's argument that the egregious nature of the respondent's conduct warrants a longer period of suspension than that recommended by the hearing panel. As the hearing panel noted, respondent "attempted to manipulate the biological mother and, as a result, interfered with justice." Respondent's conduct "amounted to emotional blackmail" of an unrepresented 18-year-old who was dealing with a process that was already "'emotionally exhausting.'" His "electronic message was designed to embarrass, burden, and create guilt in the mind of the biological mother." These "bullying tactics directly reflect on [respondent's] fitness to practice law as an attorney." Consequently, we hold that the respondent should be suspended for a period of 6 months. A minority of the court would impose a longer period of suspension. We unanimously order a reinstatement hearing under Rule 219.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Eric Michael Gamble be suspended for 6 months from the practice of law in the state of Kansas effective on the filing of this opinion in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and, in the event of his filing of a petition for reinstatement, shall be subject to a reinstatement hearing under Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407). At the reinstatement hearing, the respondent is required to present clear and convincing evidence that he understands the gravity of his conduct and that he has successfully completed anger management and any other treatment or therapy that has been recommended by a physical or mental health care professional.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,037 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.