No. 118,165

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF LEAWOOD,
*Appellee*,

v.

ROBERT PUCCINELLI,
*Appellant*.

SYLLABUS BY THE COURT

1.

Standard field sobriety tests are not searches under the Fourth Amendment to the United States Constitution or Section 15 of the Kansas Constitution Bill of Rights.

2.

The voluntariness of consent to a search is a factual question that the district court determines. On appeal, we uphold its finding if it is supported by substantial evidence.

3.

In this case, even if field sobriety tests were considered a search under Fourth Amendment standards, the district court's finding that the defendant voluntarily completed them is supported by substantial evidence.

4.

While the results of horizontal gaze nystagmus (HGN) tests are not admissible in Kansas courts for any purpose unless a proper foundation for their scientific validity is made, evidence about the process of testing may be introduced if it is otherwise relevant. Here, the defendant's ability to follow simple instructions was relevant, so the district

court did not err in allowing evidence about—but not including the results of—HGN testing.

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed June 22, 2018. Affirmed.

*Thomas J. Bath Jr.* and *Mitch E. Biebighauser,* of Bath and Edmonds, P.A., of Overland Park, for appellant.

*Marcia L. Knight*, assistant city attorney, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

LEBEN, J.:  Robert Puccinelli appeals his conviction for driving under the influence of alcohol, raising two points. We do not find either of them persuasive.

First, he argues that allowing a police officer to testify about how Puccinelli did on field sobriety tests violated Puccinelli's Fourth Amendment right to be free from unreasonable searches. But field sobriety tests aren't searches under the Fourth Amendment at all. For the most part, the tests simply check for physical actions associated with inebriation, something that a careful observer might learn simply from watching the defendant.

Second, he argues that the district court shouldn't have allowed the officer to testify that he had given Puccinelli the horizontal-gaze-nystagmus (HGN) test, a test that hasn't been shown sufficiently based on science for its results to be presented in Kansas criminal trials. But the test results weren't admitted in Puccinelli's trial. Instead, the sequence of the officer giving instructions about the HGN test and Puccinelli's responses was admitted mainly because of how much difficulty Puccinelli had in following simple

2

instructions. That evidence was relevant in determining whether Puccinelli was drunk and was properly admitted for that purpose.

FACTUAL AND PROCEDURAL BACKGROUND

Before we look in depth at the legal issues, we need to set out some of the factual background. Because part of Puccinelli's legal argument is based on his claim that he objected to doing the field sobriety tests but was ordered to do them anyway, we will include the facts related to the voluntariness of his participation in those tests.

Puccinelli's encounter with Leawood police officer Andrew Bacon began in what we'd generally call late on a Monday night in April 2016, though it was actually 12:45 a.m. the following morning. Bacon pulled Puccinelli over for failing to signal a turn.

Puccinelli said he had come from a nearby Taco Bell and that he had thrown his Taco Bell trash out the window. Bacon said he didn't see Puccinelli come from the Taco Bell parking lot and asked if he'd been anywhere else. Puccinelli said he hadn't.

Bacon then said he'd seen Puccinelli come out of the parking lot of a nearby bar, but Puccinelli denied having been there. He also denied having had anything to drink that night.

Bacon said he was going to "have [Puccinelli] do a couple of things in the window of the car to so [Bacon could] make sure [Puccinelli was] alright to drive." Puccinelli agreed, but again denied having had anything to drink.

Bacon first asked Puccinnelli to do a fingertip-counting test. Although Bacon explained it, Puccinelli said he didn't understand what Bacon wanted him to do. Then,

3

after failing to do the test correctly, Puccinelli said he wasn't going to get out of the car and that he hadn't been drinking.

Bacon then asked Puccinelli to recite the alphabet from C to N and to count backwards from 83 to 62. Puccinelli couldn't do those tests correctly, either. At that point, Bacon told Puccinelli to step out of the vehicle.

Puccinelli said he wasn't "comfortable with this." But Bacon told him, "Okay, well, comfortable or not, you need to get out of the car." Puccinelli complied.

Bacon then began to give Puccinelli three standard field sobriety tests—the HGN test, in which the person visually follows a moving object while the officer looks for involuntary eye movements; the walk-and-turn test, in which the driver must walk heel to toe in a line; and the one-leg-stand test, in which the driver stands on one leg while counting out loud.

For the HGN test, Bacon told Puccinelli to stand with his feet together, arms down at his side. Bacon told him to follow a pen being moved back and forth in front of him without moving his head—only moving his eyes. Shortly after starting the test, Bacon asked, "What do you want me to do, look at the pen?" Bacon again told Puccinelli to follow the pen with his eyes, but Puccinelli quit doing that and looked directly at the officer after only a short time. Bacon asked whether he was looking at the pen or the officer. "You, now," Puccinelli replied.

At that point, Puccinelli made the first of several references to a desire to move on to taking a breath test (using a machine called a "breathalyzer"): "Do you wanna give me a breathalyzer, I mean 'cause I'm not drunk. So let's—let's move on with this," Puccinelli said.

Bacon instead asked Puccinelli next to do the walk-and-turn test. Puccinelli again said, "Why can't we just do the breathalyzer?" But Bacon said "[w]e'll get to it." Bacon then began giving instructions, but Puccinelli had trouble understanding them and said, "I'm not going to do it. Give me the breathalyzer . . . ." After a bit more discussion, Puccinelli did the walk-and-turn test.

Bacon then explained the one-leg-stand test. Puccinelli did it without objection.

In Bacon's opinion, Puccinelli failed both the walk-and-turn test (showing six of eight clues for impairment) and the one-leg-stand test (showing three of four clues of impairment). Bacon also had smelled an odor of alcohol coming from inside Puccinelli's car, had noticed Puccinelli's eyes were bloodshot, and had noticed that Puccinelli had not been able to follow simple instructions. Based on all of that, Bacon arrested Puccinelli.

After the arrest, Bacon took Puccinelli to a nearby police station and asked that he take either a breath or blood test for alcohol. Puccinelli refused.

The City of Leawood charged Puccinelli with one count of driving under the influence of alcohol and the separate traffic infraction of failing to signal a turn. Before trial, Puccinelli asked the court to suppress the evidence of the field sobriety testing. We don't have a copy of the motion he filed in the district court, but an earlier motion filed in municipal court had alleged "an unlawful search of Mr. Puccinelli's person." The district court denied the motion, concluding that field sobriety tests aren't a search under the Fourth Amendment. Even if they were, the court also concluded that Puccinelli had voluntarily consented to do the tests.

At the beginning of trial, Puccinelli also asked that the court preclude the City from presenting any evidence that Bacon had administered one specific test, the HGN

test. The City said it didn't seek to introduce the HGN test results, and the court denied Puccinelli's motion.

The City's case was presented at a jury trial in district court. (Puccinelli had appealed after his initial conviction in municipal court.) Both Bacon and Puccinelli testified, and the jury also saw police recordings of their encounter.

Puccinelli told the jury that he had gone through the Taco Bell drive-through window and had eaten in his car. After that, he said he had stopped at the nearby bar Officer Bacon had mentioned during the traffic stop. Puccinelli admitted having one mixed drink there and a "couple" of beers earlier in the day. He told the jury, though, that he felt he had been sober enough to drive that night.

The jury convicted Pucinnelli of DUI and the failure to use a turn signal. The district court sentenced him to serve 2 days in custody plus 12 months of probation. He also received fines of $1,000 for the DUI and $100 for the failure to signal a turn. If Puccinelli fails to satisfactorily complete his probation, there's an underlying 180-day sentence that would have to be served.

Puccinelli then appealed to our court.

ANALYSIS

I. *The District Court Properly Denied Puccinelli's Motion to Exclude All Evidence of the Field Sobriety Tests.*

Puccinelli's first argument is that his rights under the Fourth Amendment were violated through the admission of evidence about the field sobriety tests. The Fourth Amendment protects our right to be free from unreasonable searches and seizures.

6

Generally a search may be conducted only with a warrant, issued on probable cause, or when a recognized exception to the warrant requirement applies. See *State v. Ramirez*, 278 Kan. 402, Syl. ¶¶ 2-3, 100 P.3d 94 (2004).

One of the warrant exceptions is a search by consent. Puccinelli argues that field sobriety tests "can be likened" to a consent-based search: If there's no consent, the search—here field sobriety tests—aren't proper.

Puccinelli contends that he didn't voluntarily take the field sobriety tests, citing statements he made like, "I'm not going to do it. Give me the breathalyzer . . . ." Thus, he argues, he didn't consent to the field sobriety tests, and the court should have held the tests constituted an illegal search that violated the Fourth Amendment.

But there are two problems with his argument. First, field sobriety tests are not Fourth Amendment searches, so there can be no Fourth Amendment violation. Second, the district court concluded that he voluntarily participated in the field sobriety testing, and there's evidence to support its conclusion.

Let's start with the Fourth Amendment. It explicitly protects us "against unreasonable searches and seizures." There's no dispute here that Puccinelli was *seized*— he was driving a car and the officer made him stop. But that's not a violation of the Fourth Amendment. Officer Bacon had seen Puccinelli commit a traffic infraction, the failure to signal a turn, so the officer could lawfully stop the car. And once the officer smelled alcohol, saw bloodshot eyes, and had some confusing answers coming from the driver, the officer could reasonably extend the traffic stop to investigate whether Puccinelli had been driving while intoxicated. See *State v. Jones*, 300 Kan. 630, Syl. ¶¶ 1-6, 333 P.3d 886 (2014); *State v. McClellan*, No. 115,164, 2017 WL 839720, at *4-7 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (February 26, 2018). Thus, Puccinelli hasn't challenged the constitutionality of his seizure.

Instead, he has challenged the officer's act of conducting field sobriety tests as an illegal *search*. So the threshold question we must address is whether field sobriety tests are a search at all.

We have a handy explanation of what's a search from a Kansas Supreme Court opinion: A Fourth Amendment search occurs when "(1) the government obtains information by physically intruding on a constitutionally protected area, *i.e.*, persons, houses, papers, or effects; or (2) invades a subjective expectation of privacy that society recognizes as reasonable." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 4, 345 P.3d 258 (2015) (citing *Florida v. Jardines*, 569 U.S. 1, 10-11, 133 S. Ct. 1409, 185 L. Ed. 2d 495 [2013]). The field sobriety testing done here was not a search under those criteria.

First, Bacon didn't intrude on any constitutionally protected area. He didn't make physical contact with Puccinelli until after the field sobriety tests were done. The only papers or effects the officer touched was Puccinelli's driver's license; Puccinelli had no expectation of privacy in it—an officer can ask for a driver's license, registration, and proof of insurance in any traffic stop. See *Jones*, 300 Kan. at 640. And the officer didn't intrude here on Puccinelli's home.

Second, the three standard field sobriety tests done here—HGN, the walk-and-turn test, and the one-leg-stand test—don't invade any area for which there is a reasonable expectation of privacy. A majority of the Washington Supreme Court recently held in *State v. Mecham*, 186 Wash. 2d 128, 134, 380 P.3d 414 (2016), that these tests are a seizure but not a search when—as is true in Puccinelli's case—the driver has not yet been arrested and there's a reasonable basis for the DUI investigation. We find persuasive the four-justice plurality opinion in *Mecham*, which concluded that tests like these simply are not searches. As they explained, there's simply no invasion of a reasonable privacy expectation:

"[Field sobriety tests] require a detainee to perform three activities: visually follow a moving object while the officer looks for involuntary eye movements, walk heel to toe in a line, and stand on one leg while counting out loud. None of these activities is private in nature. Indeed, they are all physical characteristics that any observer might see upon casual observation of a person under the influence of drugs or alcohol. [Field sobriety tests] thus do not invade a person's reasonable expectations of privacy." 186 Wash. 2d at 142.

We do realize that not all courts are in agreement on this point. Some have held that field sobriety tests do constitute Fourth Amendment searches. E.g., *Commonwealth v. Blais*, 428 Mass. 294, 701 N.E.2d 314 (1998); *Hulse v. State*, 289 Mont. 1, 961 P.2d 75 (1998); *State v. Nagel*, 320 Or. 24, 880 P.2d 451 (1994). More recently, Washington (in the *Mecham* case) and Georgia have disagreed. See *Mitchell v. State*, 301 Ga. 563, 802 S.E.2d 217 (2017). We find the position taken in *Mecham* and *Mitchell* more persuasive.

Puccinelli didn't reveal any sensitive information during the sobriety tests that would reasonably be expected to be kept private. He had no reasonable expectation of privacy in his balance, coordination, or responses to simple mental-acuity challenges, like a divided-attention task. These simply show physical characteristics and responses that could have been seen in the neighborhood bar or when he chose to get into his car and drive on public streets. See *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

Indeed, the United States Supreme Court has held that no Fourth Amendment rights are violated by a government actor requiring a suspect to provide handwriting samples or to read a text so that it might be recorded. See *United States v. Mara*, 410 U.S. 19, 21, 93 S. Ct. 774, 35 L. Ed. 2d 99 (1973) (handwriting sample); *United States v. Dionisio*, 410 U.S. 1, 14, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973) (voice sample).

9

"Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *Mara*, 410 U.S. at 21. By contrast, the Supreme Court has held that taking blood, obtaining a DNA sample, or removing scrapings from underneath a fingernail—the physical removal of tangible evidence—does constitute a Fourth Amendment search. See *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) (blood); *Maryland v. King*, 569 U.S. 435, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013) (cheek swab for DNA); *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973) (fingernail scrapings).

We agree with the Georgia Supreme Court that "[a] field sobriety test appears to us to be an act more akin to a handwriting or voice exemplar than the physical removal of tangible evidence." *Mitchell*, 301 Ga. at 570. So we conclude that field sobriety tests do not constitute searches under the Fourth Amendment.

Puccinelli also claimed that the field sobriety tests violated Section 15 of the Kansas Constitution Bill of Rights. But he provided no separate analysis under the Kansas Constitution, and our Supreme Court has held that Section 15 "provide[s] the same protection from unlawful government searches and seizures as the Fourth Amendment to the federal Constitution." *State v. Daniel*, 291 Kan. 490, Syl. ¶ 5, 242 P.3d 1186 (2010). We therefore find that field sobriety tests do not constitute searches under Section 15, either.

The second problem with Puccinelli's argument is that the district court concluded that he voluntarily took the field sobriety tests. So even if those tests constitute a Fourth Amendment search, the exception to the warrant requirement for consent searches would apply. See *State v. Parry*, 305 Kan. 1189, 1195-96, 390 P.3d 879 (2017).

Puccinelli raised this issue in the district court on a pretrial motion to exclude evidence about the sobriety tests. The district court specifically found as a factual matter "that he did not refuse to take the test[s], and took these tests voluntarily." The court noted that the officer "was extremely polite during the entire process" and "never even raised his voice." The court also recognized that Puccinelli sometimes said things like he wasn't comfortable with the process or let's move on to the breath test, but concluded that he wasn't refusing to take the tests and voluntarily did so.

When we review the district court's ruling on a motion to suppress evidence, we generally follow two rules for appellate review. First, we must accept the district court's factual findings if they are supported by substantial evidence. Second, we then independently review its legal conclusions. *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016). When appellate courts consider a district court ruling about consent to search, though, the Kansas Supreme Court has held that the voluntariness of the consent is a factual issue that "appellate courts review to determine if competent evidence supports the trial court's findings." *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007); accord *State v. Ransom*, 289 Kan. 373, Syl. ¶ 2, 212 P.3d 203 (2009). Here, there's substantial evidence to support the district court's conclusion that Puccinelli voluntarily complied with the officer's request that he do the field sobriety tests.

When the officer first asked Puccinelli to get out of his car, he said he was "not comfortable with this," but he quickly got out of the car after the officer said he needed to do that. And an officer at a traffic stop has an absolute right to have a driver get out of the car. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977).

On the second test—the walk-and-turn test—Puccinelli's objections were mainly that the street where the officer asked him to do the test wasn't flat. After some complaints about the slope, Puccinelli began his approach of asking to move on to the

11

breath-test phase at the first. Officer Bacon said he needed to go in order—and when Bacon suggested using a flatter driveway rather than the street, Puccinelli agreed:

> Puccinelli: "Why can't we just do the breathalyzer?"
>
> Bacon: "We'll get to it."
>
> Puccinelli: "And I can show that I'm not going to do that, so . . ."
>
> Bacon: "I have to do the whole thing when I do it. That's the last thing, okay, so just bear with me here."
>
> Puccinelli: "Sure."
>
> Bacon: "You're going to imagine a line that's going to run from where your foot's at all the way to the front of my car and back to where you're standing at again. What I need you to do now is take your left foot and put it on that line. This line's completely straight. It's approximately the width of your foot."
>
> Puccinelli: "I—it's—I'm—it's—I'm not going to do it 'cause it's not—it's not flat."
>
> Second Officer: "Okay. Why don't we use that driveway? It's a straight line."
>
> Puccinelli: "Sure."

Puccinelli argues in his appellate brief that he requested three times to "move on with this," meaning to skip over the field sobriety tests and proceed to a breath test. But the example we've given above typifies what happened. Bacon would say that he needed to go step by step, and Puccinelli would then agree to do so. On the facts, then, there's support for the district court's conclusion that Puccinelli proceeded voluntarily.

In making its ultimate finding on voluntariness, a court must consider all the circumstances; no single factor is determinative. *State v. Thompson*, 284 Kan. 763, 803-04, 811-13, 166 P.3d 1015 (2007). Here, of course, Puccinelli had been stopped—seized, in Fourth Amendment terms—by the officer. He wasn't free to leave the scene. But Puccinelli acted as if he *could* refuse to do the tests requested by the officer; he said directly that he wasn't going to do some of what he was asked to do. On the walk-and-turn test, for example, he initially said he wouldn't do the test because the street wasn't flat enough. When offered an alternate location, the nearby driveway, though, he agreed to proceed. Ultimately, he did all three of the field sobriety tests. We conclude that the district court's finding that he did so voluntarily is supported by substantial evidence.

II. *The District Court Properly Allowed Evidence of Puccinelli's Failure to Follow Simple Directions during the HGN Test while Evidence of the Results of that Test Were Excluded.*

The second issue on appeal relates solely to the HGN testing. As part of that test, an officer observes a person's eye movements to get a measure of whether the person is intoxicated. That's something based on scientific principles and well beyond the knowledge of jurors. So our Supreme Court has held that "before the results from an HGN test may be considered by a Kansas court for any purpose, the State must establish the reliability of such a test in a district court within this state." *City of Wichita v. Molitor*, 301 Kan. 251, Syl. ¶ 2, 341 P.3d 1275 (2015).

At Puccinelli's trial, the City didn't present evidence of the HGN test *result*. But the City did present a video showing the officer's interaction with Puccinelli during the HGN test. The City said it did so to show that Puccinelli wasn't able to follow simple instructions, something that might well be an indicator of inebriation.

13

Puccinelli made a pretrial motion to exclude all evidence related to the HGN testing, which the district court denied. A district court may grant such a motion before trial when (1) the evidence would be inadmissible and (2) a pretrial ruling, rather than a ruling during trial, is justified because the mere mention of the evidence at trial may cause unfair prejudice or confusion. *State v. Shadden*, 290 Kan. 803, Syl. ¶ 3, 235 P.3d 436 (2010). The starting point for analysis, then, is whether the evidence was admissible.

To determine whether the evidence was admissible, we look to see whether it's material and probative, as required of evidence for it to be relevant under K.S.A. 60-401(b). Evidence is material if the fact it proves "has some real bearing on the decision in the case." *State v. Torres*, 294 Kan. 135, 139, 273 P.3d 729 (2012). Evidence is probative "if it furnishes, establishes, or contributes toward proof." *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014). In other words, the evidence must tend to make a fact that's of consequence in determining the case more or less probable than it would be without the evidence.

On appeal, we review the district court's decision that the evidence was material—of consequence in determining the case—independently, with no required deference to the district court. We review the district court's decision that the evidence was probative—tending to make the consequential fact more or less probable—only for abuse of discretion. *State v. Magallanez*, 290 Kan. 906, Syl. ¶ 4, 235 P.3d 460 (2010). A district court abuses its discretion if no reasonable person would agree with its decision or the decision is based on a factual or legal error. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

The key fact here was Puccinelli's level of intoxication. Since he refused breath and blood tests, there was no mathematical data available to the jury. So the jury had to rely on other evidence.

14

The City argued that Puccinelli's inability to follow simple instructions during the HGN test helped to show how intoxicated he was. Puccinelli counters on appeal that because HGN test *results* aren't admissible because their validity hasn't been shown, his "manner of performing the test is no more material than the results." We disagree.

The City made no attempt to present the results of the HGN tests. But it presented both video of the HGN testing (with redactions for any portion that might have referenced how Puccinelli was doing) and Bacon's testimony.

As we noted in our earlier factual summary, Bacon told Puccinelli to use his eyes to watch a pen moving back and forth in front of him. Yet shortly after beginning the test, Puccinelli asked, "What do you want me to do, look at the pen?" Bacon explained it again, but after briefly watching the pen, Puccinelli started looking directly at Bacon instead. When asked at trial whether Puccinelli had been "able to follow your instructions" on that test, Bacon replied, "He did poorly at it."

The jury had the opportunity to view the videotape and hear testimony from both Bacon and Puccinelli. Being unable to follow simple instructions was probative because it made it more probable that Puccinelli was intoxicated. And that was a fact of consequence so it was material.

We do recognize that our Supreme Court has directed that the results of HGN testing may not be admitted for any purpose unless the State (or here, a municipality) first comes into court and proves that test's scientific reliability. *Molitor*, 301 Kan. 251, Syl. ¶ 2. We do not believe our ruling here undercuts that holding in any way. The jurors in this case weren't told anything about the results of the HGN test, and they were instructed not to make any assumptions about portions of the videotape that had been removed. Nor, as far as we can tell, did any party even hint at the HGN results to the jury. While Puccinelli claims in his brief that jurors might have heard Bacon's response ("He did

15

poorly at it.") as a comment on the test results, that answer came in response to a simple question: "Was he able to follow your instructions?"

Unless the scientific reliability of HGN testing is first proved in a Kansas court, trial courts and attorneys should be careful to make sure that HGN test results are neither mentioned nor presented in such a way that the jury would make an inference about the results. Doing so would violate the *Molitor* ruling. In this case, though, Puccinelli's inability to follow instructions was relevant evidence—and perhaps the clearest example of this came during the HGN testing. We find no error in the district court's admission of that testimony.

The district court's judgment is affirmed.

\* \* \*

SCHROEDER, J., concurring:  I concur in the result but I write separately to caution prosecutors in the use of video footage of the administration of the HGN test. The safest path might be to ignore or redact that portion of the video. Here, the video was admitted to show Puccinelli failed to follow the officer's instructions while he was trying to administer the field sobriety tests, including the HGN. Although the video was properly admitted in this case, using video of the HGN test risks getting too close to the exclusions in *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015), requiring reversal of the conviction. This seems a harsh penalty for the slight benefit of showing a defendant's inability to follow simple instructions during the administration of the HGN test. To be safe, I caution against the use of videotape of the HGN test.