NOT DESIGNATED FOR PUBLICATION

No. 119,133

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHERYL DENISE MCANALLY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; STEPHEN R. TATUM, pro tem, and JAMES CHARLES DROEGE, judges. Opinion filed July 26, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

LEBEN, J.: Cheryl McAnally appeals the district court's order that she pay $789,282 in restitution. McAnally had pleaded guilty to one count of felony theft and four counts of felony forgery for embezzling about $1 million from medical staff and hospital bank accounts at Overland Park Regional Medical Center.

The restitution order came after a contested evidentiary hearing. The State first documented the total losses of the medical staff and hospital at $972,273, an amount McAnally didn't contest. The State's accounting witnesses then showed that McAnally

had repaid $22,542 by check. And there were $2,370 in cash deposits for which the source couldn't be identified that the State agreed to credit to McAnally.

Some uncertainty arose, though, when a partial analysis of the different accounts showed $158,079 more coming back into the accounts than the State's witnesses could account for. Without looking at other accounts (from which the money had come), the State's accounting witnesses couldn't determine the source of that amount of credits. The district court decided to credit McAnally with the unexplained $158,079 amount as well. The court subtracted these three sums—$22,542 and $2,370 and $158,079—from $972,273 to arrive at the ordered restitution amount, $789,292.

But McAnally testified that she had repaid much more. She estimated that she had returned $500,000, though she did not offer any documentation.

On appeal, she argues that she "testified unequivocally that she had repaid approximately $500,000" and "[t]he State presented no evidence to contradict this testimony." She contends that the district court had to accept her testimony: "Having found that she had paid some money back, no reasonable judge would find that her testimony that she had paid back more money was not credible."

A bold argument—but not a persuasive one. The district court didn't ignore McAnally's testimony; the court found her testimony lacked credibility. That's no surprise in the very case in which McAnally was found to have stolen about $1 million through secret withdrawals over several years. And a court acting as fact-finder can take a person's dishonest acts, like embezzlement and forgery, into account in determining that person's credibility. See K.S.A. 60-421.

So we find nothing wrong with the district court's conclusion that it "[did] not accept the defendant's testimony that she replaced a lot more money back into the

2

account" because "[t]here is just nothing to support that except for her testimony and the Court does not accept that part of her testimony." The trial judge who hears the evidence makes the credibility judgments, not the appellate judges who only review a transcript. See *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

We still must look at the evidence supporting the district court's decision to be sure that it didn't abuse its discretion in setting the restitution amount. See *State v. Martin*, 308 Kan. 1343, 1349-50, 429 P.3d 986 (2018). The court would abuse its discretion if it decided based on a legal or factual error or if its decision was so off the mark that no reasonable person would agree with it. *City of Leawood v. Puccinelli*, 56 Kan. App. 2d 108, 118-19, 424 P.3d 560 (2018). We find no abuse of discretion here.

The State presented six witnesses at the restitution hearing:
- Roxanne Hollingsworth, a records custodian for Bank of America who authenticated bank records;
- Shari Collier, former chief financial officer for Overland Park Regional Medical Center and the person who discovered McAnally's embezzlement scheme;
- Kimberly Forbes Hatley, a certified public accountant and certified fraud examiner for the Hospital Corporation of America;
- Fred Magerkurth, a financial advisor for Wells Fargo who had helped investigate the accounts McAnally used;
- Candace Annette Bridges, a former financial detective with the Overland Park Police Department who had investigated credit-card accounts McAnally had taken out in the name of the medical staff; and
- Jason Novotny, a financial-crimes investigator for the Johnson County District Attorney's office who did an overall review of the financial documents obtained by others.

Collectively, those witnesses documented $972,273 in losses, a figure McAnally didn't challenge. She also agreed that she should receive credit for the $22,542 she had repaid by check and $2,370 of cash deposits.

A large question arose, though, when Novotny testified that $158,079 was deposited into hospital accounts through electronic transfers that Novotny didn't credit to McAnally. Novotny explained that he was looking only for cash or checks that McAnally would have sent; he assumed that the $158,079 represented payments of some kind from a sweep account also held by the hospital or its medical staff. He said that these payments came through an interbank transfer but that he didn't review the accounts from which the funds came to determine the source. Novotny said that since "Mrs. McAnally doesn't have access to the Federal Reserve . . . she would not have been able to make the interbank transfer."

Even so, the district court decided to credit McAnally for the additional $158,079 too. That meant that she got credited for the $22,542 she clearly repaid, $2,370 in cash deposits for which no source could be documented, and $158,079 that Novotny testified McAnally had not repaid but the court deducted, anyway, given the uncertainty. The State did not cross-appeal that $158,079 deduction.

In some respects, the State's decision not to contest that deduction on appeal, the State's decision about how fully to develop the accounting records for the restitution hearing, and the district court's decision to give McAnally the benefit of the doubt on the questionable $158,079 sum reflect the practicalities of the case that the parties and the district court understood. McAnally told the court at her sentencing hearing that she had recently qualified for Social Security disability, so the chances seem remote that she could repay either the $789,282 figure set by the court or the $947,361 figure the State was seeking.

4

Even after much work and hearing from six witnesses called by the State, some questions remained, but it was a reasonable judgment call by the prosecutor not to spend even more resources tracking down all the possibilities. The district court also made a reasonable judgment call by converting any uncertainty into a reduction in the restitution amount in McAnally's favor. The district court did not abuse its discretion in setting the restitution amount.

There is one additional issue in this appeal. It arises in part because this is McAnally's second appeal; we had considered a restitution order once before and had ordered a new restitution hearing. See *State v. McAnally*, No. 111,196, 2015 WL 5311448 (Kan. App. 2015) (unpublished opinion). Shortly after our opinion in that first appeal, McAnally moved to withdraw her guilty pleas. But the district court held it had no jurisdiction to consider that motion because it wasn't part of what we'd sent back for rehearing.

Both parties agree that the district court was wrong on that point. See *State v. Fritz*, 299 Kan. 153, 155, 321 P.3d 763 (2014) (holding that a defendant may move to withdraw a plea on remand for resentencing). But there is a question that will arise when the district court hears the motion that the parties do disagree about.

When the motion to withdraw plea is made before sentencing, the defendant need only show "good cause" to withdraw the plea. After sentencing, though, the defendant must show that withdrawal is necessary "to correct manifest injustice." K.S.A. 2018 Supp. 22-3210(d)(2). In McAnally's case, though, the motion to withdraw plea was made after her original sentencing hearing but before restitution was finally determined. McAnally argues that the good-cause standard applies; the State argues that the manifest-injustice standard applies.

5

We note that the sentencing statute contemplates that restitution will be set "before imposing sentence." K.S.A. 2018 Supp. 22-3424(d)(1). But in this case, like many others, the court chose to handle the sentencing before finalizing the restitution amount. That too is an understandable decision: the parties are often focused mainly on the potential prison sentence, not the amount of restitution to be paid later. And the parties can try to agree on the restitution amount after the stress of the sentencing hearing is behind them.

In *Fritz*, 299 Kan. at 157, the court faced a similar situation. The defendant had moved to withdraw plea after his original sentencing but before a resentencing hearing ordered by the appellate court. The district court determined that the motion didn't justify setting aside the plea under either the good-cause or manifest-injustice standards, and the Kansas Supreme Court agreed. Neither court determined which standard would apply since it made no difference under the facts of that case.

Based on *Fritz*, we decline to determine which standard the district court should apply. We simply note that to provide an adequate record should there be another appeal, the district court should make explicit which standard it has applied unless it determines, as the *Fritz* court did, that the result would be the same under either standard.

We affirm the district court's judgment as to the amount of restitution, reverse its judgment dismissing the defendant's motion to withdraw plea, and remand for further proceedings on the motion to withdraw plea.